UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:13-CV-897-TDS-LPA

| | |
|---|---|
| JAMES DILLON on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BMO HARRIS BANK, N.A., FOUR OAKS BANK & TRUST CO., a North Carolina Chartered Bank, GENERATIONS FEDERAL CREDIT UNION, and BAY CITIES BANK, a Florida State-Chartered Bank,<br><br>Defendants. | **DEFENDANT FOUR OAKS BANK & TRUST CO.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS** |

Plaintiff James Dillon complains he was charged excessive interest on a loan made by Island Finance, LLC, d/b/a White Hills Cash ("White Hills Cash"). His complaint is properly directed to his lender, White Hills Cash, not to defendant Four Oaks Bank & Trust ("Four Oaks"). Four Oaks' only involvement in the loan was to help fulfill electronic payment transactions that Plaintiff expressly authorized. Provision of this ministerial function does not create liability under the federal RICO statute or North Carolina law, and Plaintiff's claims against Four Oaks should be dismissed.

1

**Background**

In December of 2012, Plaintiff James Dillon took out a loan in the amount of $305 from Island Finance, LLC d/b/a/ White Hills Cash ("White Hills Cash") via the lender's website, www.whitehillscash.com. (Compl. ¶¶ 16b, 93.) A true and accurate copy of the loan agreement between Plaintiff and White Hills Cash is attached to the declaration of Michelle Fox, filed herewith.[1] White Hills Cash is an arm of the Ft. Belknap Indian Community of the Ft. Belknap Reservation of Montana. (Fox Dec., ¶ 3 & Ex. C.)

Both the crediting of the loan proceeds and the debiting of some of the payments were made electronically pursuant to the ACH authorization in the loan agreement. (Compl. ¶¶ 93-95; Fox Dec., ¶¶ 13-16.) The ACH system is the mainstream electronic payment system used by banks, employers, government agencies, and other entities for transactions such as direct depositing of paychecks, crediting of tax refunds, and payment of utility bills. (Compl. ¶¶ 6, 36-39.) Billions of transactions, worth trillions of dollars, flow through the system annually. (Compl. ¶ 39.)

---

[1] Ms. Fox's declaration may properly be considered by the Court in deciding this motion. Four Oaks has moved to dismiss under Rule 12(b)(7), under which the Court may consider matters outside the pleadings. *See R-Delight Holding LLC v. Anders*, 246 F.R.D. 496, 499 (D. Md. 2007). Furthermore, for purposes of Rule 12(b)(6) the loan agreement may be considered part of the pleading because it is referenced in the Complaint (¶¶ 95, 99) and is integral to the claims asserted. *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 195 n.5 (4th Cir. 2002); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

This massive electronic web provides the only thread linking Plaintiff's loan with defendant Four Oaks, a state-chartered bank based in Four Oaks, North Carolina. (Compl. ¶¶ 13, 95.) Four Oaks initiated the ACH debit transactions from Plaintiff's bank account, serving as an intermediary between White Hills Cash (the lender) and Wells Fargo (Plaintiff's bank). (Compl. ¶¶ 6, 93-95.) Four Oaks otherwise has no connection to the loan.

## Argument

**I.    The lender is an indispensable party to this action.**

Plaintiff's complaint should not be directed to Four Oaks, which merely processed his ACH transactions, but rather to his lender, White Hills Cash. Plaintiff's failure to join White Hills Cash as a defendant necessitates dismissal under Rules 12(b)(7) and 19.[2]

White Hills Cash is the counterparty to the loan agreement challenged by Plaintiff. Plaintiff contends that the agreement is governed by North Carolina law (rather than the tribal law specified by the loan agreement), and that under North Carolina law the agreement is illegal and thus unenforceable. When a lawsuit concerns the rights and obligations created by a contract, the parties to that contract are necessary parties. *See, e.g.*, *Nat'l Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*,

---

[2] This issue has been explored at length in the briefs of defendants BMO Harris Bank, N.A. [Dkt. 39] and Bay Cities Bank [Dkt. 43]. The arguments of those defendants are incorporated herein by reference.

3

210 F.3d 246, 252 (4th Cir. 2000) (stating that "precedent supports the proposition that a contracting party is the paradigm of an indispensable party" (quoting *Travelers Indem. Co. v. Household Int'l, Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991)); *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150 (9th Cir. 2002) ("[A] party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract."); *Enter. Mgmt. Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890, 894 (10th Cir. 1989). This is true regardless of whether the claim sounds in tort or contract. *See, e.g.*, *Kermanshah v. Kermanshah*, No. 08-CV-409(BSJ)(AJP), 2010 WL 1904135, at *5 (S.D.N.Y. May 11, 2010). White Hills Cash is therefore a necessary party to this action.

White Hills Cash is an arm of the Ft. Belknap Indian Community of the Ft. Belknap Reservation of Montana, a federally recognized Indian tribe,[3] and was created by and is operated for the Tribe. (Fox Dec., ¶¶ 3-12 & Ex. A-C) It is therefore immune from suit under principles of sovereign immunity and cannot be joined. *Kiowa Tribe of Okla. v. Mfg. Technologies, Inc.*, 523 U.S. 751, 760 (1998); *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991). Courts routinely dismiss claims that implicate the rights and

---

[3] For the Department of the Interior's list of federally recognized tribes, see 78 Fed. Reg. 26384 (May 6, 2013).

obligations created by a contract when one or more of the contracting parties cannot be joined due to tribal sovereign immunity. *E.g.*, *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 552-53 (4th Cir. 2006); *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1027 (9th Cir. 2002); *Dawavendewa*, 276 F.3d at 1161-63; *United States ex. rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 479-81 (7th Cir. 1996); *Enter. Mgmt. Consultants*, 883 F.2d at 892-94; *Hardy v. IGT, Inc.*, No. 2:10-CV-901-WKW [WO], 2011 WL 3583745, at *5-8 (M.D. Ala. Aug. 15, 2011). Plaintiff's claims against Four Oaks all depend on the validity and legality of his loan agreement with White Hills Cash, but tribal sovereign immunity prevents White Hills Cash from being joined.

Accordingly, White Hills Cash is an indispensable party, and the case against Four Oaks must be dismissed. Plaintiff may, however, pursue relief against White Hills Cash pursuant to the dispute resolution procedures set forth in the loan agreement. (Fox Dec., Ex. C)

**II. Plaintiff has failed to state a claim for relief under either federal or North Carolina law.**

In addition to being subject to dismissal under Rule 12(b)(7) for failure to join an indispensable party, Plaintiff's complaint is subject to dismissal under Rule

5

12(b)(6) for failure to state a claim upon which relief can be granted.[4] Neither the federal RICO statute, nor any of the state law claims asserted in the complaint, gives Plaintiff a cause of action against Four Oaks for an allegedly usurious loan made by a third party.

### A. Plaintiff has not stated a claim for relief under the federal RICO statute.

"Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991). As such, federal law carefully circumscribes its use. RICO does not, as Plaintiff would have it, create liability for anyone who is in any way connected with an allegedly unlawful debt. Rather, RICO's application is limited to persons or entities who conduct an "enterprise" for the purpose of collecting unlawful debts. *See* 18 U.S.C. § 1962(c). Four Oaks is not such an entity.

### 1. Four Oaks is not part of a RICO enterprise.

RICO applies only to allegedly unlawful acts conducted as part of an "enterprise." *See* 18 U.S.C. § 1962(c). For an informal association of entities to constitute an enterprise, they must function as a continuing unit and be working

---

[4] The insufficiency of plaintiff's complaint is more fully addressed in the briefs of defendants BMO Harris Bank, N.A. [Dkt. 39] and Bay Cities Bank [Dkt. 43]. Again, the arguments of those defendants are incorporated herein by reference.

together toward a common purpose. *See Boyle v. United States*, 556 U.S. 938, 945-46 (2009); *United States v. Turkette*, 452 U.S. 576, 583 (1981).

The purported enterprise in this case is the "ACH Network," which by Plaintiff's definition includes every individual who uses direct deposit or pays bills electronically, along with utility companies, employers, banks, government agencies, and any other person or entity that has any connection to the national electronic payment system. (Compl. ¶¶ 36-39, 130.) This network is far too vast—and its members far too independent—to function as a single interconnected unit. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 374-75 (3d Cir. 2010).

Furthermore, the network's participants are far too diverse to have the necessary common purpose. For example, an employee who gets her paycheck electronically deposited to her account is part of the alleged "ACH Enterprise" (Compl. ¶ 130d) but does not share the common purpose of "facilitating large volume batch processing of electronic payments (credit and debit transactions) for and between participating depository financial institutions" (Compl. ¶ 131a); she simply wants to get paid. Utility companies that bill via electronic payment are also part of the alleged "ACH Enterprise" (Compl. ¶ 130a) but likewise do not have any purpose of "facilitating large volume batch processing" of payments. In

7

short, the entire United States electronic financial system cannot be considered a unitary "enterprise" for purposes of RICO liability.

### 2. Four Oaks did not conduct the affairs of a RICO enterprise.

Furthermore, for purposes of RICO liability, it is insufficient to allege that a defendant is merely connected in some way to an enterprise; the plaintiff must show that the defendant has some part in directing the affairs of the enterprise. *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). Four Oaks, however, is accused of nothing more than processing electronic payment transactions in the ordinary course of its business, which is a far cry from directing the affairs of the entire nationwide electronic payment system.

### 3. Four Oaks did not "collect" an unlawful debt.

RICO prohibits conducting the affairs of an enterprise through "collection of unlawful debt." 18 U.S.C. § 1962(c). Four Oaks, however, is not alleged to be the lender, a debt collection agency, or any similar entity, but merely a transaction processor. In this role, Four Oaks is not "collecting" a debt any more than the U.S. Postal Service is collecting a debt when it handles delivery of a physical check. *See United States v. Pepe*, 747 F.2d 632, 674 (11th Cir. 1984) (holding that to be "collecting" a debt, the defendant must be inducing repayment).

8

### 4. Four Oaks had no knowledge of any purportedly unlawful debt.

RICO is not a strict liability statute; a defendant is liable only if it "assisted an enterprise with knowledge of its illegal activities." *Marshall v. City of Atlanta*, 195 B.R. 156, 169 (N.D. Ga. 1996). Plaintiff does not allege that Four Oaks, at the time it debited Plaintiff's account, had knowledge regarding the specific loan in this case that would cause Four Oaks to know the loan was unlawful. Furthermore, even if Four Oaks had carefully examined the loan agreement in this case prior to debiting Plaintiff's account, the loan agreement designates tribal law as the governing law, and Plaintiff does not contend that the loan violates tribal law. (Fox Dec., Ex. C) Absent any actual knowledge of illegality, Plaintiff's RICO claim must fail.

### 5. In the absence of a plausible RICO claim, Plaintiff cannot maintain conspiracy claims.

The Fourth Circuit applies the bright line rule that a RICO conspiracy claim must be dismissed if the complaint fails to state a claim for a substantive RICO violation. *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 551 n.2 (2001). Plaintiff's RICO conspiracy claim is therefore also subject to dismissal.

### B. Plaintiff has not stated a claim for relief under North Carolina law.

Plaintiff has asserted multiple state law claims, none of which are sufficient to survive a motion to dismiss:

#### 1. North Carolina Usury Statute.

North Carolina's usury statute prohibits "the parties to a loan" from "contracting in writing for the payment of interest" in excess of the legally permitted rate. N.C. Gen. Stat. § 24-1.1(a). Plaintiff does not allege that Four Oaks is a party to any loan or that it contracted in writing for the payment of usurious interest. Accordingly, it cannot be liable for usury under North Carolina law.

Moreover, North Carolina courts have not recognized any cause of action for "aiding and abetting" violations of the usury statute. The sole remedies recognized under North Carolina law are (i) forfeiture of the agreed-upon interest and (ii) recovery of double the interest actually paid. N.C. Gen. Stat. § 24-2. An action to recover interest paid is "an action in the nature of action for debt" and lies only against the lender. *Argo Air, Inc. v. Scott*, 18 N.C. App. 506, 512, 197 S.E.2d 256, 259 (1973) (stating that the usury statute, which "must be strictly construed," "simply works a forfeiture of the entire interest, and subjects *the lender* to liability to the borrower for twice the amount of interest paid" (emphasis added)). Here,

there is no allegation that Four Oaks ever entered into or assumed any loan agreement with Plaintiff, and thus Plaintiff cannot recover from Four Oaks under the usury statute.

### 2. North Carolina Consumer Finance Act

Four Oaks, as a North Carolina state-chartered bank, is exempt from the North Carolina Consumer Finance Act ("NCCFA"). N.C. Gen. Stat. § 53-191; Compl. ¶ 13. Additionally, the NCCFA only applies to lenders who make loans. N.C. Gen. Stat. § 53-166(a). Plaintiff does not allege that Four Oaks made any of the loans at issue, and thus the NCCFA cannot apply.

Because the NCCFA does not apply to Four Oaks, there is no basis for Plaintiff's allegations that Four Oaks "sought to avoid" its provisions. (Compl. ¶¶ 193-94,196.) The "evasion" provision of the NCCFA applies to lenders who attempt to disguise their loans (for example, by characterizing them as "cash rebates" or other advances of funds), not to non-lenders like Four Oaks in this case. *See* N.C. Gen. Stat. 53-166(b) (providing that N.C. Gen. Stat. § 53-166(a) applies "to any person who seeks to avoid its application by any device, subterfuge, or pretense whatsoever," including through transactions involving "a cash rebate or other advance of funds"). Plaintiff alleges no such subterfuge by Four Oaks, nor could he, because the loans he complains about were made by other parties.

11

### 3. North Carolina Unfair and Deceptive Trade Practices Act

Plaintiff has not plausibly alleged an unfair or deceptive trade practices claim under N.C. Gen. Stat. § 75-1.1. "[T]o establish a prima facie claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). The determination of whether an act is unfair or deceptive is a "question of law for the court." *Id.* Furthermore, "some type of egregious or aggravating circumstances must be alleged." *Id.* at 657, 548 S.E.2d at 711 (emphasis in original). A practice is unfair "when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and is deceptive "if it has the capacity or tendency to deceive." *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 72, 653 S.E.2d 393, 399 (2007).

Plaintiff has not alleged that Four Oaks committed any practice other than debiting his bank account in connection with a loan agreement, an act he expressly authorized. (Compl. ¶ 93.) First, there is nothing inherently unfair or deceptive about this practice, and Plaintiff's allegations concerning Four Oaks' purported knowledge regarding the nature of these debits and the legality of the underlying loan agreements are wholly conclusory. Second, Plaintiff makes only a conclusory

12

allegation that this practice "affects commerce." (Compl. ¶ 214.) Third, Plaintiff does not plausibly allege that this practice proximately caused his alleged injuries, which are all traceable to the loan agreements he entered. There is no allegation that Four Oaks had any involvement in bringing about those agreements—only that it later debited his account pursuant to those agreements, which is something that any bank with access to the ACH Network could have done. Accordingly, Plaintiff has not plausibly alleged that the acts of Four Oaks proximately caused his alleged damages.

### 4. Unjust Enrichment/Money Had and Received

These claims fail because Plaintiff's loan was governed by an express contract. Under North Carolina law, an unjust enrichment claim is a claim in quasi-contract or contract implied in law. *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988). Plaintiff's claim for money had and received is a type of unjust enrichment claim, and is likewise based in implied contract. *Dean v. Mattox*, 250 N.C. 246, 251, 108 S.E.2d 541, 546 (1959) (stating that "an action to recover for money had and received, under the doctrine of unjust enrichment, is an action on implied contract"). When there is an express contract, however, "the contract governs the claim and the law will not imply a contract." *Id.* (citing *Concrete Co. v. Lumber Co.*, 256 N.C. 709, 124 S.E.2d 905 (1962)); *see also Ron Medlin Constr. v. Harris*, 364 N.C. 577, 580, 704 S.E.2d 486, 489 (2010).

13

Plaintiff's claims against Four Oaks are based on an express contract—his loan agreement. Accordingly, his claims for unjust enrichment and money had and received must fail.

### 5. Permanent Injunctive Relief

Plaintiff's request for permanent injunctive relief, which is not a distinct legal claim, also fails. Permanent injunctive relief is only available to a party that shows actual success on the merits. *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S 531, 546 n.12 (1987). For the foregoing reasons, Plaintiff's substantive claims fail, and thus Plaintiff is not entitled to permanent injunctive relief. *E.g.*, *Hassan v. Hassan*, No. 1:06CV634, 2007 WL 2156318, at *3 (M.D.N.C. July 26, 2007) ("Because Plaintiff has failed to state a claim upon which relief may be granted and the action will be dismissed, his motion for a temporary and permanent injunction . . . [is] moot and will, accordingly, be denied.").[5]

### Conclusion

Plaintiff's challenge to his loan agreement is properly directed to his lender, not to defendant Four Oaks Bank & Trust. Plaintiff's claims against Four Oaks should therefore be dismissed.

---

[5] Additionally, plaintiff has not plausibly alleged that he has suffered an irreparable injury, that remedies available at law are inadequate, that the balance of hardships weights in his favor, or that a permanent injunction would not disserve the public interest. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (stating these four factors must be demonstrated to obtain a permanent injunction).

Respectfully submitted, this the 23rd day of December, 2013.

                SMITH, ANDERSON, BLOUNT, DORSETT,
                   MITCHELL & JERNIGAN, LLP

                By:  /s/ Clifton L. Brinson
                Carl N. Patterson, Jr.
                NC Bar No. 7260
                Clifton L. Brinson
                NC Bar No. 34331
                Isaac A. Linnartz
                NC Bar No. 39858
                150 Fayetteville Street
                Suite 2300
                Raleigh, NC  27601
                Ph.: (919) 821-1220
                Fax: (919) 821-6688
                cpatterson@smithlaw.com
                cbrinson@smithlaw.com
                ilinnartz@smithlaw.com
                *Attorneys for Defendant Four Oaks Bank & Trust Co.*

# CERTIFICATE OF SERVICE

I certify that on December 23, 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such to the following CM/ECF participants:

Norman E. Siegel
Steve Six
J. Austin Moore
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
siegel@stuevesiegel.com
six@stuevesiegel.com
moore@stuevesiegel.com
*Attorneys for Plaintiffs*

Jeffrey M. Ostrow
Jason H. Alperstein
Kopelowitz Ostrow P.A.
200 S.W. 1st Avenue, Suite 1200
Fort Lauderdale, FL 33301
ostrow@KOlawyers.com
Alperstein@KOlawyers.com
*Attorneys for Plaintiffs*

Darren T. Kaplan
Chitwood Harley Harnes LLP
1350 Broadway, Suite 908
New York, NY 10018
dkaplan@chitwoodlaw.com
*Attorneys for Plaintiffs*

F. Hill Allen
Tharrington Smith, LLP
P.O. Box 1151
Raleigh, NC 27602-1151
hallen@tharringtonsmith.com
*Attorneys for Plaintiffs*

Hassan A. Zavareei
Tycko & Zavareei LLP
2000 L Street, N.W., Suite 808
202Washington, DC 20036
hzavareei@tzlegal.com
*Attorneys for Plaintiffs*

Mary K. Mandeville
Alexander Ricks PLLC
2901 Coltsgate Road, Suite
Charlotte, NC 28211
mary@alexanderricks.com
*Attorneys for BMO Harris Bank, N.A.*

| | |
|---|---|
| Lucia Hale<br>Debra Bogo-Ernst<br>Mayer Brown, LLP<br>71 Wacker Drive<br>Chicago, IL 60606<br>lnale@mayerbrown.com<br>dernst@mayerbrown.com<br>*Attorneys for BMO Harris Bank, N.A.* | Reid Calwell Adams, Jr.<br>Womble Carlyle Sandridge & Rice<br>One West Fourth Street<br>Winston-Salem, NC 27101<br>cadams@wcsr.com<br>*Attorneys for Generations Federal Credit Union* |

Mark Vasco
Alston & Bird LLP
Bank of America Plaza
101 S. Tryon Street, Suite 4000
Charlotte, NC 28280-4000
mark.vasco@bryancave.com
*Attorneys for Bay Cities Bank*

                Respectfully submitted,

                /s/ Clifton L. Brinson
                Clifton L. Brinson
                N.C. State Bar No. 34331
                SMITH, ANDERSON, BLOUNT,
                DORSETT, MITCHELL & JERNIGAN,
                L.L.P.
                P.O. Box 2611
                Raleigh, North Carolina 27602-2611
                Tel: (919) 821-6681
                Fax: (919) 821-6800
                Email: cbrinson@smithlaw.com
                *Attorney for Defendant*
                *Four Oaks Bank & Trust Co.*