UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:13-CV-897

| |
|---|
| JAMES DILLON, on Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> BMO HARRIS BANK, N.A., FOUR OAKS BANK & TRUST, a North Carolina-Chartered Bank, GENERATIONS FEDERAL CREDIT UNION, and BAY CITIES BANK, a Florida State-Chartered Bank, <br><br> Defendants. |

**PLAINTIFF'S RESPONSE TO DEFENDANTS BMO HARRIS BANK, N.A. AND GENERATIONS FEDERAL CREDIT UNION'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF THEIR RENEWED MOTIONS**

Plaintiff James Dillon files this response to Defendants BMO Harris Bank, N.A. ("BMO Harris") and Generations Federal Credit Union's ("Generations") (collectively "Defendants") Notice of Supplemental Authority (Doc. 124), wherein Defendants propose that an opinion out of the Eastern District of New York in *Moss v. BMO Harris Bank N.A.*, 13-CV-5438 JFB GRB, 2014 WL 2565824 (E.D.N.Y. June 9, 2014) ("*Moss*"), purportedly supports BMO Harris' renewed motion to compel arbitration (Doc. 102) and Generations' renewed motion to dismiss (Doc. 106) in this case. As briefly explained below, *Moss* does not provide this Court with any beneficial guidance in deciding these renewed motions.

First, the *Moss* case was filed on behalf of a putative class of New York residents and the case involves interpretation of New York and Second Circuit law, both of which are inapplicable here.

Second, to the extent New York and Second Circuit law are persuasive, the Eastern District of New York's analysis of the "relationship" between the non-signatory defendants and the signatory plaintiffs requisite to compel arbitration by equitable estoppel under the leading Second Circuit cases of *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354 (2d Cir. 2008) and *Ross v. American Exp.*, 547 F.3d 137 (2nd Cir. 2008) relied upon a series of factual determinations which were not supported by the record. In both *Sokol* and *Ross*, the Second Circuit rejected estoppel claims by non-signatories seeking to compel arbitration because the non-signatory was "too remote from the contract" and not "foreseeable" to the contracting parties. *See Sokol*, 542 F.3d at 362 (rejecting claim of estoppel where nonsignatory's only relationship to contract was as a third-party wrongdoer); *Ross*, 547 F.3d at 148 ("[P]laintiffs have it precisely correct when they assert that there [was] no reason for someone signing up for a Chase Visa card, for example, to believe that he (or she) was entering into any kind of relationship with [Amex]." (internal quotation marks omitted and alterations in original)).

Likewise in this case, Plaintiff had absolutely no reason to believe he was entering into a contractual relationship with unknown ODFI banks like Defendants. Nevertheless, the Eastern District of New York held in *Moss*:

> The question is whether it was foreseeable that defendants would be included among the lenders' agents and servicers, and the Court concludes that it was foreseeable based on the language of the loan agreements. All

> five loan agreements include authorizations by plaintiffs for the lenders to receive payments via electronic funds transfers. In four of the five agreements, plaintiffs explicitly authorized the lender's "servicer" or "agent" to perform the ACH debit entries, and these are the same words contained in the arbitration provisions quoted above. Therefore, plaintiffs clearly consented to arbitrate with defendants in those four agreements. . . . . Having agreed to arbitrate with undefined agents and servicers, and likewise having agreed that agents and servicers could perform the ACH transactions, it would be inequitable for plaintiffs to avoid arbitration with those same agents and servicers.

There are several errors in this holding. First, as was briefed by the plaintiffs in *Moss*, ODFI banks cannot be "agents" of the payday lenders because the NACHA rules that govern the ACH Network make the ODFI banks gatekeepers to the ACH Network and require the ODFI banks independently to evaluate and monitor the activities of the payday lenders they allow to access the Network. New York does not recognize an agency relationship where the purported agent supervises and polices the purported principal. *See*, *e.g.*, *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 110 (S.D.N.Y. 2009) ("an agency relationship results from a manifestation of consent by one person to another that the other shall act on his behalf and ***subject to his control***, and the consent by the other to act.") (emphasis added). For the same reason, Defendants here cannot be agents of the payday lenders under North Carolina law. *See*, *e.g.*, Plaintiffs' Response in Opposition to Defendant BMO Harris Bank, N.A.'s Motion To Compel Arbitration and Stay Litigation (Doc. 70, p. 24) ("The entire thrust of Plaintiff's Complaint is that BMO was not permitted to act as if it were an agent of illegal payday lenders, blindly complying with payment processing requests. To the contrary, NACHA operating rules made BMO a 'gatekeeper' to the ACH Network and required BMO to independently evaluate and

3

monitor the activities of Great Plains and others it allowed to access the network."). Indeed, in this case, Defendant BMO Harris has specifically asserted that "***BMO Harris in fact is not the lender's agent***…." (Doc. 36, p. 22) (emphasis added). Moreover, the Eastern District of New York made an agency determination without the benefit of an evidentiary hearing on the issue. *See, e.g., Time Warner City Cable v. Adelphi Univ.*, 813 N.Y.S.2d 114, 116 (N.Y. App. Div. 2006) ("where the circumstances raise the possibility of a principal-agent relationship, and no written authority for the agency is established, questions as to the existence and scope of the agency must be submitted to the jury.").

Second, the Eastern District of New York's conclusion that the ODFI banks were also "servicers" of the payday lenders is a factual determination of an issue that was never even raised by the litigants and ignores the well-established role of a "servicer" in the context of a loan transaction – which is vastly different from the role of an ODFI bank. Indeed, equating ODFIs with "servicers" fails to account for the numerous legal and financial reporting consequences of ODFIs being defined as "servicers" of the loans for which they originate payments. For example, the Real Estate Settlement Procedures Act ("RESPA") has very specific requirements for servicers of mortgage loans. *See*, *e.g.*, 12 U.S.C. § 2605. If the ODFI function were to equate with that of a "loan servicers," then mortgagors that paid their mortgage via ACH would subject the ODFI originating the borrower's mortgage loan payments to specific requirements under RESPA, as well as the Truth in Lending Act. 15 U.S.C.A. § 1641. Likewise, since numerous states require mortgage loan servicers to be licensed, ODFIs would be required to be licensed as loan servicers simply because they take on the completely separate and distinct role and

4

function of originating ACH debits on behalf of mortgagees.

Here, Defendants have similarly failed to establish the control element of an agency relationship (and BMO explicitly disclaims an "agency" role) and have failed to unequivocally argue that they are "servicers" of the payday lenders;[1] should this Court wish to consider that argument in deciding Defendants' renewed motions, Plaintiff respectfully requests an evidentiary hearing on that issue.

For the foregoing reasons, the *Moss* decision has no bearing on this case and Defendants' renewed motions should be denied.

Dated:  June 18, 2014

Respectfully submitted,

/s/ F. Hill Allen
F. Hill Allen
North Carolina State Bar No. 18884
E-mail: hallen@tharringtonsmith.com
**THARRINGTON SMITH, L.L.P.**
P.O. Box 1151
Raleigh, NC 27602-1151
Telephone: 919-821-4711
Facsimile: 919-829-1583

| **STUEVE SIEGEL HANSON LLP** | **CHITWOOD HARLEY HARNES LLP** |
|---|---|
| Norman E. Siegel | Darren T. Kaplan |
| Steve Six | 1350 Broadway, Suite 908 |
| J. Austin Moore | New York, NY 10018 |
| 460 Nichols Road, Suite 200 | Tel: (917) 595-3600 |
| Kansas City, MO 64112 | Fax: (404) 876-4476 |
| Tel: (816) 714-7100 | dkaplan@chitwoodlaw.com |

---

[1] Generations dubiously argued in its original motion to dismiss that "Dillon alleges that Generations is involved in the servicing and collection of the Loan Agreement and therefore is a 'holder' who may enforce the arbitration clause against Dillon." (Doc. 16, pp. 9, 10). As established at oral argument, Plaintiff never alleged that Generations or any of the Defendants "serviced" loans on behalf of payday lenders, and Defendants certainly do not have the right to enforce the loans as "holders" of the notes.

5

Fax: (816) 714-7101
siegel@stuevesiegel.com
six@stuevesiegel.com
moore@stuevesiegel.com

| **KOPELOWITZ OSTROW P.A.** | **TYCKO & ZAVAREEI LLP** |
|---|---|
| Jeffrey M. Ostrow | Hassan A. Zavareei |
| 200 S.W. 1st Avenue, 12th Floor | 2000 L Street, N.W. |
| Fort Lauderdale, Florida 33301 | Suite 808 |
| Tel: (954) 525-4100 | Washington, D.C. 20036 |
| Fax: (954) 525-4300 | Tel: (202) 973-0900 |
| ostrow@KOlawyers.com | Fax: (202) 973-0950 |
| | hzavareei@tzlegal.com |

**Counsel for Plaintiff and the Class**

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

/s/ F. Hill Allen
Counsel for Plaintiff and the Class

7

Case 1:13-cv-00897-CCE-LPA   Document 125   Filed 06/18/14   Page 7 of 7