IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JAMES DILLON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13-CV-897 |
| | ) | |
| BMO HARRIS BANK, N.A., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

The Court previously denied motions to compel arbitration filed by defendants BMO Harris, Generations, and Bay Cities because the alleged arbitration agreements were not authenticated. The defendants have now obtained affidavits purporting to authenticate the agreements and have filed renewed motions to compel arbitration. The plaintiff, James Dillon, objects.

At the outset, the Court must determine the appropriate legal standard. In their renewed motions, the defendants offered no legal basis to revisit this previously decided issue.[1] In response, Mr. Dillon contended that the Court should apply the standard for motions to reconsider under Federal Rule of Civil Procedure 54(b). On reply, the defendants contended that the limits on motions to reconsider do not apply and that motions to compel arbitration can be renewed anytime when necessary to resolve evidentiary deficiencies.

In the absence of a change of circumstances, an invitation from the court, or other unusual situations, parties do not get a second chance to "renew" previously unsuccessful

---

[1] The defendants' limited legal arguments appeared in their motions, rather than in separate briefs, in violation of Local Rule 7.3(a).

motions to the Court. Were the rule otherwise, parties would be able to file serial motions to dismiss for lack of personal jurisdiction, for summary judgment, for discovery sanctions, and for any other fact-driven motions after a court rules against them, for no better reason than that they now know what standard the court will apply.

Such a result is inconsistent with the Rules of Civil Procedure and common sense. "Public policy favors an end to litigation and recognizes that efficient operation requires the avoidance of re-arguing questions that have already been decided." *Akeva L.L.C. v. Adidas Am., Inc.*, 385 F. Supp. 2d 559, 565 (M.D.N.C. 2005) (citing *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*, 322 F.3d 147, 167 (2d Cir. 2003) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." (internal quotations omitted))). As eloquently stated by the District Court in Maryland:

> Hindsight being perfect, any lawyer can construct a new argument to support a position previously rejected by the court, especially once the court has spelled out its reasoning in an order. It is hard to imagine a less efficient means to expedite the resolution of cases than to allow the parties unlimited opportunities to seek the same relief simply by conjuring up a new reason to ask for it.

*Potter v. Potter*, 199 F.R.D. 550, 553 (D. Md. 2001) (Grimm, M.J., memorandum & order); *accord Bey v. Shapiro Brown & Alt, LLP*, Civil Case No. PWG-13-1562, 2014 WL 661586, at *10 (D. Md. Feb. 20, 2014) (discussing Rule 59(e)). Thus, courts do not allow a litigant to take a second bite at the apple any time the litigant loses a motion.

The arbitration cases the defendants cite are not to the contrary. In each cited case, the court allowed a renewed motion to compel arbitration only when its initial ruling denying the motion indicated an intention to revisit the issue. *See Goldberg v. C.B. Richard Ellis, Inc.*, Civil Action No. 4:11-cv-02237-RBH, 2012 WL 6522741, at *2 (D.S.C. Dec. 14, 2012) (noting initial motion to compel arbitration was denied without prejudice); *Newark Bay Cogeneration P'ship,*

*LP v. ETS Power Grp.*, Civil Action No. 11-2441(ES)(CLW), 2012 WL 4504475, at *5 (D.N.J. Sept. 28, 2012) (Waldor, M.J., report & recommendation) (noting court ordered limited discovery after initial motion to compel arbitration); *Lucas v. Hertz Corp.*, No. C 11-01581 LB, 2012 WL 1496183, at *2 (N.D. Cal. Apr. 27, 2012) (denying without prejudice initial motion to compel arbitration due to evidentiary problems and expressly giving defendant opportunity to refile); *Quazilbash v. Wells Fargo & Co.*, No. 09-CV-0652-CVE-FHM, 2010 WL 1643778, at *2 (N.D. Okla. Apr. 22, 2010) (same). These cases do not create a new rule specific to arbitration that allows an unsuccessful movant to try again regardless of the circumstances.

Here, in contrast, the defendants did not request discovery or time to develop evidence to authenticate the alleged agreements, even after Mr. Dillon identified the evidentiary deficiency; indeed they affirmatively contended in their briefing and repeatedly at oral argument that they had no burden to authenticate the arbitration agreements. (*See* Doc. 52 at 3-4; Doc. 80 at 6 n.2; Doc. 88 at 6; Doc. 101 at 4-10.) The Court rejected this legal argument and unequivocally denied the motions, and nothing in the Court's order suggested the denial was without prejudice to refiling or that discovery on the factual issue was appropriate. (*See* Doc. 100.)

Under the defendants' view, there would be no end to their right to file successive motions to compel arbitration, no matter how many times they were unsuccessful.[2] Such serial motions without good cause are unfair to the opposing party, waste court resources, and are inconsistent with the general rule that parties should present all of their arguments to the Court in the first instance. "Renewed" motions to arbitrate are not exempt from the rules on motions to reconsider interlocutory rulings. Therefore, the Court will treat the defendants' renewed motions

---

[2] Mr. Dillon has expressly challenged the adequacy of Bay Cities' newly-filed declarations, so the prospect of such successive motions is real. (*See* Doc. 126 at 1-2 & n.1.)

to compel arbitration as motions to reconsider pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.[3]

Motions to reconsider are generally granted only if "(1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." *Akeva*, 385 F. Supp. 2d at 566. Reconsideration is "discretionary, not automatic," and is only "appropriate when justice requires it." *United States v. Duke Energy Corp.*, 218 F.R.D. 468, 474 (M.D.N.C. 2003) (Eliason, M.J., order), *aff'd*, 2012 WL 1565228 (M.D.N.C. Apr. 30, 2012). "[A] party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider." *Id.* (quoting *Fidelity State Bank v. Oles*, 130 B.R. 578, 581 (D. Kan. 1991)).

BMO Harris contends it is entitled to reconsideration because of newly available evidence—i.e., the evidence to authenticate the purported arbitration agreement.[4] All three defendants contend that the Court should reconsider its prior order to prevent manifest injustice.

BMO Harris contends that the newly-filed declaration from the lender authenticating the loan agreement with the arbitration clause qualifies under Rule 54(b) as evidence not previously available. However, BMO Harris did not submit any evidence with its motion to support its factual assertion that this evidence was unavailable earlier. Its unsupported statements in a

---

[3] No party contends that the Court should apply any other Rule of Civil Procedure, such as Rule 59(e) or Rule 60(b), or any other procedure. *See Pledger v. UHS-Pruitt Corp.*, No. 5:12-CV-484-F, 2014 WL 1365909, at *2 (E.D.N.C. Apr. 7, 2014) (comparing Rule 59 and Rule 54).

[4] In its reply brief, Bay Cities joins BMO Harris's contentions on cases related to previously unavailable evidence. (Doc. 127 at 2-3.) However, Bay Cities provides no evidence with either its renewed motion or its reply brief as to why it was unable to obtain its declarations earlier, so the Court finds that Bay Cities waived this argument.

motion are not evidence, *see, e.g.*, *Cochran v. Volvo Grp. N. Am., LLC*, 931 F. Supp. 2d 725, 730 (M.D.N.C. 2013), and violate the Local Rules. *See* L.R. 7.3(e).

Once this evidentiary gap was pointed out by Mr. Dillon in his response to the renewed motion, BMO Harris filed an affidavit from its counsel in an effort to establish that the evidence was newly discovered. (Doc. 115.) Mr. Dillon contends that the Court should not consider counsel's declaration because of the violation of the Local Rules. The Court need not address this argument; even considering the declaration, BMO Harris has not demonstrated that the new evidence "could not have been obtained through the exercise of due diligence." *Duke Energy*, 218 F.R.D. at 474 (quoting *Fidelity State Bank*, 130 B.R. at 581).

BMO Harris's counsel affirms that he contacted the lender in early November 2013 and asked for a copy of the loan agreement and a supporting declaration to authenticate it. (Doc. 115 at ¶ 4.) Counsel further affirms that while the lender sent counsel a document, the lender was unwilling to authenticate the document without receiving certain promises in exchange, which BMO Harris was not willing to make. (*Id.* at ¶¶ 5-6.) Only after the Court denied the motion to compel arbitration did the lender agree to provide a declaration without requiring any side promises. (*Id.* at ¶ 8.)

This declaration shows that several weeks before filing its motion to compel arbitration BMO Harris knew that authentication was likely to be an issue, knew who the witnesses were who could provide information about authenticity, and knew that it could not obtain that evidence voluntarily.[5] (*Id.* at ¶¶ 5-6.) Yet BMO Harris did not request an extension of time to file the motion, seek discovery through the court, or even mention the lender's lack of

---

[5] Counsel's declaration states that he learned on November 19, 2013, that the lender would not authenticate the loan agreement. (Doc 115 at ¶ 5.) The record reflects that the original motion to compel arbitration was filed December 16, several weeks later. (Doc. 35.)

cooperation in its brief or oral argument. Rather, BMO Harris argued that it did not have to authenticate the arbitration agreement. (Doc. 88 at 6; Doc. 101 at 4-10.) In these circumstances, BMO Harris did not exercise due diligence.

BMO Harris cites *Passmore v. Discover Bank*, No. 1:11-CV-01347, 2011 WL 5086431, at *5 (N.D. Ohio Oct. 26, 2011), to support its contention that a properly authenticated arbitration agreement is new evidence sufficient to reconsider an interlocutory order. That case, however, is distinguishable because, among other reasons, the moving party never asserted that the agreement did not have to be authenticated and the court reconsidered the matter based on the same evidence that had earlier been before the state court before removal. *See id.*

Nor is the Court persuaded by the defendants' contention that their renewed motions should be granted to prevent manifest injustice. This is not a case where the plaintiff and each defendant entered into an arbitration agreement. Rather, the defendants rely on arbitration agreements in contracts Mr. Dillon allegedly signed with third parties, the lenders. Nothing suggests that any defendant required arbitration agreements in such loan documents before it would act as an ODFI for the lender. Thus, whether there is a potential arbitration agreement is, as to the defendants, just a matter of chance and not a bargained-for right. Moreover, none of the moving defendants thought the matter important enough to seek court assistance for discovery to obtain information from the lenders, and, at least as to BMO Harris, the third party who allegedly included the arbitration clause in the loan documents refused to cooperate in its efforts to enforce the arbitration agreement.

The defendants contend that failure to reconsider would give rise to manifest injustice because the Court lacks discretion to deny motions to compel arbitration of otherwise arbitrable claims under the Federal Arbitration Act. The longstanding federal policy favoring arbitration

6

agreements and the non-discretionary nature of the decision to enforce valid agreements are relevant and have been considered. But motions to reconsider an interlocutory ruling are discretionary. *See Duke Energy*, 218 F.R.D. at 474. The federal policy favoring arbitration does not give parties who want to arbitrate endless opportunities to convince a court to compel arbitration, nor does it excuse them living with the consequences of their own strategic decisions.

The defendants also cite *Gonzalez v. Citigroup, Inc.*, No. CIV. S-11-0795 LKK/GGH, 2011 WL 5884250, at *3 (E.D. Cal. Nov. 23, 2011), to support their manifest injustice contention, but that case is distinguishable. In *Gonzalez*, the plaintiff was allowed to file late evidence on the original motion to compel arbitration, which the defendant was not given an opportunity to rebut. *Id.* This, combined with the evidence that the plaintiff agreed to arbitrate with the defendant, supported the court's conclusion that reconsideration was appropriate to prevent manifest injustice. *Id.* Here, in contrast, the plaintiff did not file any late evidence and, as noted *supra*, the defendants do not contend they have an agreement with Mr. Dillon to arbitrate; they rely on agreements Mr. Dillon allegedly has with third parties.

Rule 54 is not designed to give a party a second chance to cross the finish line once the Court has provided a roadmap:

> When parties file a motion with the court, they are obligated to insure that it is complete with respect to facts, law and advocacy. Once a court has issued its ruling . . . that should end the matter, at least until appeal. Were it otherwise, then there would be no conclusion to motions practice, each motion becoming nothing more than the latest installment in a potentially endless serial that would exhaust the resources of the parties and the court—not to mention its patience.

*Potter*, 199 F.R.D. at 553; *see Pinney v. Nokia, Inc.*, 402 F.3d 430, 453 (4th Cir. 2005) (quoting *Potter* with approval). Unless motions to reconsider are "strongly convincing," they will not be rewarded. *See Shields v Shetler*, 120 F.R.D. 123, 126 (D. Colo. 1988) (noting that motions to reconsider are "not a license . . . to get a second bite at the apple").

7

This case provides a good example of the need to treat motions to reconsider with caution to prevent them from turning motions practice into an "endless serial" that wastes judicial resources. The defendants' initial motions were filed in November and December 2013. (*See* Docs. 14, 35, 40.) Once the plaintiff challenged the authenticity of the agreements, the defendants made no effort to obtain evidence in support of the agreements until after they lost the motions. The renewed motions were filed one to three months after the Court's first order on the subject, each requiring responses and replies and, as to BMO Harris, a sur-reply necessitated by a violation of the Local Rules. (*See* Docs. 102, 106, 122, 123.) This delay and repetition is unfair to the plaintiff and imposes unnecessary costs on the parties and the Court.

The defendants made a strategic choice to file their original motions without authenticated documents and to argue that authentication was not necessary. They have not provided a good reason for allowing them to attempt to avoid the consequences of that strategic decision. Because the defendants have not satisfied the Court that reconsideration is appropriate under Rule 54(b), their renewed motions will be denied.[6]

In the Court's discretion, it is **ORDERED** that BMO Harris's renewed motion to compel arbitration, (Doc. 102), is **DENIED**, Generations' renewed motion to dismiss, (Doc. 106), is **DENIED**, and Bay Cities' renewed motion to compel arbitration, (Doc. 123), is **DENIED**.

This the 7th day of July, 2014.

UNITED STATES DISTRICT JUDGE

---

[6] It may be that the alleged loan agreements will otherwise have relevance in this case, and the Court is not prohibiting the defendants from relying on these loan agreements in connection with other issues.

8