IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JAMES DILLON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13-CV-897 |
| | ) | |
| BMO HARRIS BANK, N.A., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter is before the Court on renewed motions filed by three defendants seeking to either compel arbitration or to dismiss because of a failure to arbitrate. (Docs. 149, 152, 154). The arbitration provisions on which the three defendants rely are contained in documents purporting to be loan agreements between various non-party lenders and plaintiff James Dillon.

Defendant Generations has presented credible undisputed evidence that Mr. Dillon and Western Sky Financial entered into a loan agreement memorialized in a document on record, (Doc. 106-1 at 4-9), and that the document contains an agreement to arbitrate. The Court so finds. Legal issues remain as to the enforceability of that arbitration provision.

Defendants BMO Harris and Bay Cities have proffered documents purporting to be the loan agreements Mr. Dillon entered into with Great Plains Lending, USFastCash/MNE Services, and VIN Capital. (Doc. 104-1; Doc. 123-1 at 15-25; Doc. 123-2 at 6-12). Mr. Dillon has challenged the authenticity of these documents and

contends BMO Harris and Bay Cities have not established that the relevant loan agreements contained arbitration provisions. (Docs. 173, 176).

Richard Knowles, the witness who by affidavit purported to authenticate the VIN Capital loan agreement, (Doc. 123-2 at ¶ 5), turned out, at deposition, to have little to no personal knowledge about the source or creation of the purported agreement. (*See* Doc. 174-11 at 19). The two witnesses whose testimony purportedly authenticated the other agreements were not deposed. Christopher Muir, the witness purporting to authenticate the USFastCash loan agreement, provided a vague and unhelpful declaration: He was not employed by USFastCash, but rather by a "shared service provider," AMG Services; he was vague about the nature of his work and how it related to USFastCash; he did not explain how or why he became familiar with USFastCash's loan procedures; and he did not even state his job title. (Doc. 123-1 at ¶¶ 1-2; *see* Doc. 123-1 at ¶¶ 3, 5, 11). John Shotton, who by declaration purported to authenticate the loan agreement with Great Plains Lending, and Mr. Muir both stated in their declarations that they would testify if called as witnesses. (Doc. 104 at ¶ 1; Doc. 123-1 at ¶ 1). Yet both later asserted tribal immunity, either individually or through their employers, and resisted Mr. Dillon's efforts to depose them. (Doc. 174 at ¶¶ 15, 17-22; Doc. 177 at ¶¶ 15-23). The refusal to give testimony raises questions as to whether Mr. Muir's and Mr. Shotton's declarations are truthful and whether they have personal knowledge to support their declarations. Overall, the evidence as to the authenticity of these three purported agreements is of questionable admissibility and even more questionable credibility.

The plaintiff Mr. Dillon consistently testified that, while he recognized certain information in the proffered loan agreements as the same information he submitted when applying online for the loans, he did not remember reading or seeing reference to any arbitration provisions during the online loan application or acceptance process. (*See* Doc. 182-1 at 14-21, 33-34; Doc. 184-1 at 3-12, 15-20). The parts of his testimony on which the defendants rely to authenticate the written loan agreements are subject to extensive qualifications and are not particularly persuasive.

Click-wrap contracts like those at issue here pose special risks of fraud and error. When one of the contracting parties has exclusive control of the electronic record, that party is in a position to produce a document which meets its preferences and current needs, rather than a document which accurately reflects the terms agreed to during the online execution of the contract.[1] There is an additional risk of error in the production of a document from the bowels of an electronic record-keeping system, which may include agreements whose terms and electronic click-through procedures varied over time. The risk of fraud and error increases when the entity who maintains the electronic record produces a copy of the purported agreement under casual or even unknown circumstances, particularly if that entity is not a party to the litigation and is not accountable for mistakes.

These risks are reduced when electronic documents are authenticated by sworn, credible testimony from a knowledgeable witness. *Lorraine v. Markel Am. Ins. Co.*, 241

---

[1] For example, an unscrupulous lender might add an arbitration clause if it is sued by the borrower, but might delete the arbitration clause if the lender files suit claiming a default.

F.R.D. 534, 545 (D. Md. 2007) ("It is necessary . . . that the authenticating witness provide factual specificity about the process by which the electronically stored information is created, acquired, maintained, and preserved without alteration or change, or the process by which it is produced if the result of a system or process that does so . . . ."); *see also In re Vee Vinhnee*, 336 B.R. 437, 447 (B.A.P. 9th Cir. 2005) (upholding rejection of electronic records where custodial witness was "vague, conclusory, and . . . unpersuasive"). Here, however, each of the witnesses purportedly knowledgeable about the way these records were created and maintained either displayed little knowledge in their declarations, was revealed to have no such knowledge, or avoided deposition.

A district court confronted with a material dispute of fact and evidence of questionable credibility should hold a trial to resolve that dispute. *See Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707, 713 (4th Cir. 2015) (quoting with approval *Howard v. Ferrellgas Partners, L.P.,* 748 F.3d 975, 978 (10th Cir. 2014)). Because the Court questions whether these affidavits are admissible and, if they are, whether they are credible and deserving of any weight, the Court concludes that an expeditious and summary evidentiary hearing is needed to determine the content of the loan agreements Mr. Dillon entered into with Great Plains Lending, USFastCash, and VIN Capital, and specifically whether those loan agreements contained written arbitration provisions.

It is **ORDERED** that the matter is set for evidentiary hearing on Wednesday, January 27, at 9:30 a.m. in Greensboro Courtroom 3 to determine:

4

1. Whether the document proffered by BMO Harris at Doc. 104-1 is an actual copy of the loan agreement entered into by Great Plains Lending and Mr. Dillon;

2. Whether the document proffered by Bay Cities at Doc. 123-1 at 15-25 is an actual copy of the loan agreement entered into by USFastCash and Mr. Dillon;

3. Whether the document proffered by Bay Cites at Doc. 123-2 at 6-12 is an actual copy of the loan agreement entered into by VIN Capital and Mr. Dillon.

Each party may call witnesses in support of its position. A failure by the defendant with the burden of proof to call a witness with personal knowledge about how a lender's electronic contract execution process worked for each particular loan agreement at issue and how the proffered document was created and maintained will likely result in a finding that the purported loan document is inadmissible, at least until and unless the plaintiff relies on that document. The Court will also entertain legal argument from all three defendants related to the pending motions.

This the 11th day of January, 2016.

_____
UNITED STATES DISTRICT JUDGE