**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**Civil Action No. 1:13-cv-897**

JAMES DILLON, on Behalf of Himself and All Others Similarly Situated,

        Plaintiff,

v.

BMO HARRIS BANK, N.A., FOUR OAKS BANK & TRUST CO., a North Carolina Chartered Bank, GENERATIONS FEDERAL CREDIT UNION, and BAY CITIES BANK, a Florida State-Chartered Bank,

        Defendants.

Judge Catherine C. Eagles

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT GENERATIONS' MOTION FOR SANCTIONS**

Plaintiff opposes Defendant Generations Community Federal Credit Union's Motion for Sanctions. (Doc. 188).[1]

## I.    INTRODUCTION AND FACTUAL BACKGROUND

Hundreds of times a day throughout the United States, banks and other financial institutions bring legal actions on promissory notes. On every single occasion, the promissory note, like virtually every other document submitted into evidence in the U.S. state and federal court systems, is authenticated in order to avoid a hearsay objection. The

---

[1] In support of this opposition, Plaintiff submits the Declaration of J. Austin Moore ("Moore Dec."), with exhibits, filed contemporaneously.

practice is so routine as to be completely unremarkable. Yet, here, all of the Defendants save one,[2] failed in this most basic step in their opening motions.

If for no other reason than to preserve the issue for appeal, Plaintiff James Dillon raised a hearsay objection to Defendants' submission of documents into evidence without authentication. For example:

> Generations provides no declaration under Fed. R. Evid. 803(6) or certification under Fed. R. Evid. 902(11) to support the admission into evidence of the Loan Agreement. The Loan Agreement is therefore inadmissible hearsay and may not be considered in support of Generations' motion.

(Doc. 17, p. 4).

Instead of curing this obvious defect by simply providing the requisite declaration or certification on reply, Defendants offered the unsupportable argument that because the loan agreements were referenced in Plaintiff's complaint, there was no need to comply with the Federal Rules of Evidence. *See* Doc. 88, p. 6 ("But because Dillon relied upon and incorporated the agreement by reference in his complaint, the defendant may attach the agreement to its responsive pleading . . .").

But it is well established that a document annexed to an opening motion still requires an evidentiary foundation even when it is "integral to and explicitly relied on in the complaint." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606-07 (4th Cir.

---

[2] In support of its motion to dismiss, Four Oaks Bank & Trust Co. submitted the Declaration of Michelle Marie Fox in order to authenticate the loan agreement between Plaintiff and Island Finance, LLC, d/b/a White Hills Cash. (Doc. 51) Plaintiff successfully opposed the motion to dismiss but did not raise any evidentiary objection to the White Hills Cash loan agreement. (*See* Doc. 87).

2015) ("Consideration of a document attached to a motion to dismiss ordinarily is permitted only when the document is integral to and explicitly relied on in the complaint, *and when the plaintiffs do not challenge the document's authenticity*." (emphasis added and quotations omitted)).

Further, motions to compel arbitration (or to dismiss premised on the existence of an arbitration agreement) brought under the Federal Arbitration Act are decided under the same standard as that of summary judgment. *See Minter v. Freeway Food, Inc.*, No. 103CV00882, 2004 WL 735047, at *2 (M.D.N.C. Apr. 2, 2004) ("Decisions in other circuits have uniformly held that '[i]n the context of motions to compel arbitration brought under the Federal Arbitration Act (FAA), 9 U.S.C. § 4 (2000), courts apply a standard similar to that applicable to a motion for summary judgment.'" (quoting *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003))). Accordingly, while a party may support its position in seeking to compel arbitration by citing material in the record, the party's reliance on that material may be defeated if "the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2). *See also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) ("[S]ummary judgment affidavits cannot be conclusory or based upon hearsay." (citations omitted); *Whittaker v. Morgan State Univ.*, 524 F. App'x 58, 60 (4th Cir. 2013) (affirming district court's grant of summary judgment to movant after district court excluded unsworn letter submitted in opposition to summary judgment as inadmissible hearsay).

3

Notwithstanding this clear and undisputed body of case law, Generations seeks to use the broad language of Section 1927 to turn the Federal Rules of Evidence and Civil Procedure on their head and shift the responsibility for authenticating its own evidence to Plaintiff. Without a single binding precedent as authority, Generations posits that the rules against the admission of hearsay evidence are not to be enforced if the other side may have reason to believe that an identified document *might* be genuine. This nonsensical argument rises to even greater levels of absurdity when Generations argues that this shift in burden should take place *on a pre-answer and pre-discovery motion*—a position that contradicts the very nature of the adversarial system.

## II.    LEGAL STANDARD UNDER SECTION 1927

28 U.S.C. § 1927, which governs counsel liability for unreasonable and vexatious multiplication of proceedings, provides:

> Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Generally, "courts exercise authority to impose sanctions under this section 'only in instances of a serious and studied disregard for the orderly process of justice.'" *Tri-Con, Inc. v. Volvo Trucks N. Am., Inc.*, No. 1:06CV577, 2008 WL 4849523, at *3 (M.D.N.C. Nov. 4, 2008) report and recommendation adopted, No. 1:06CV577, 2009 WL 103653 (M.D.N.C. Jan. 14, 2009) (citations omitted). Indeed, "[t]he unambiguous text of § 1927 aims only at attorneys who *multiply proceedings*." *E.E.O.C. v. Great Steaks, Inc.*, 667 F.3d 510, 522 (4th Cir. 2012) (emphasis in original) (quoting *DeBauche v. Trani*, 191

4

F.3d 499, 511 (4th Cir. 1999)). A finding that counsel multiplied the proceedings "unreasonably" and "vexatiously" necessarily requires "[b]ad faith on the part of an attorney [as] a precondition to imposing fees under § 1927." *Great Steaks*, 667 F.3d at 522 (citing *Chaudhry v. Gallerizzo*, 174 F.3d 394, 411 n.14 (4th Cir. 1999) and *Brubaker v. City of Richmond*, 943 F.2d 1363, 1382 n.25 (4th Cir. 1991) (distinguishing between criteria for sanctions under Rule 11, court's inherent power, and § 1927)). Importantly, because Section 1927 is penal in nature, it is construed in favor of the sanctioned party so as not to chill the "the legitimate zeal of an attorney in representing her client." *Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 526 (5th Cir. 2002) (internal citations omitted).

A district court's decision concerning the imposition of sanctions is largely discretionary. *See Blue v. U.S. Dept. of the Army*, 914 F.2d 525, 538–39 (4th Cir. 1990) (citing *Cooter & Gell v. Hartmarx Corp.*, 110 S.Ct. 2447, 2460 (1990) (discretionary standard discussed with respect to Rule 11 sanctions also applies in context of § 1927)).

In *DeBauche*, the Fourth Circuit concluded, as a matter of law, "that the filing of a single complaint cannot be held to have multiplied the proceedings unreasonably and vexatiously and therefore that § 1927 cannot be employed to impose sanctions." *DeBauche*, 191 F.3d at 511-12. In *Great Steaks*, a case which arose out of the Middle District of North Carolina (Beaty, J.), the Fourth Circuit relied on *DeBauche* and held that a district court did not abuse its discretion when it denied attorneys' fees and costs

under § 1927 for the filing of a motion to strike and multiple motions in limine shortly

before trial:

> Great Steaks argues that the EEOC vexatiously multiplied the proceedings
> by moving to strike its summary judgment motion's memorandum of law
> on the ground that it used a font size exceeding what was allowed under the
> local rules. Great Steaks notes that, after the EEOC filed the motion to
> strike and Great Steaks responded to it, the EEOC failed to pursue the
> motion further. Finally, Great Steaks contends that the EEOC vexatiously
> multiplied the proceedings when it filed numerous motions in limine the
> week before trial.

> The district court did not abuse its discretion in denying attorneys' fees and
> costs under § 1927.… As for Great Steaks' arguments concerning the
> motion to strike and the motions in limine, there is nothing to suggest, aside
> from Great Steaks' unsupported conjecture, that the EEOC filed them in
> bad faith or that they unreasonably and vexatiously multiplied the
> proceedings. In fact, the district court expressly found that the EEOC had
> not "engaged in bad faith conduct or vexatiously multiplied the proceedings
> at any point." In the absence of any compelling evidence demonstrating that
> the district court abused its discretion in making this finding, we defer to it.

*Great Steaks*, 667 F.3d at 522-23.[3]

Here, notwithstanding Generations' attempts to show a lengthy pattern of

purported multiplication of proceedings by Plaintiff, Generations can point only to a

single filing by Plaintiff as allegedly being made in "bad faith" (Doc. 189, p. 4), a lone

paragraph in Plaintiff's responsive brief correctly noting that the loan agreement on

which Generations premised its motion to dismiss was inadmissible hearsay. (Doc. 17, p.

---

[3] *See also ABT, Inc. v. Juszczyk*, No. 5:09CV119-RLV, 2012 WL 5995551, at *2
(W.D.N.C. Nov. 30, 2012) ("the filing of counterclaims in an Answer (and responsive
filings) simply do not rise to the level of unreasonable and vexatious multiplication of the
legal proceeding").

4). This Court agreed with Plaintiff's reading of the Federal Rules of Evidence. (*See* Doc. 100, pp. 3-4).

## III. GENERATIONS FAILS TO SHOW A PATTERN OF UNREASONABLE AND VEXATIOUS MULTIPLICATION OF PROCEEDINGS

Because Generations understands that, under Fourth Circuit law, a single pleading—let alone, a single paragraph—does not suffice to demonstrate conduct that "unreasonably and vexatiously multiplied the proceedings," Generations relies on snippets of dialogue from oral argument (which concerned three other loan agreements in addition to that on which Generations relied) and subsequent motion practice and appeals on other issues and discovery as supposedly being part of a course of conduct. Generations' attempts to show multiple acts of conduct fail.

***Oral argument on Generations' Motion to Dismiss***: Generations claims that Plaintiff's counsel's actions (or lack thereof) at oral argument in March 2014 were bad faith conduct. (Doc. 189, p. 4). However, the only statement Generations identifies at oral argument is *this Court's own question to the Defendants*:

> **THE COURT:** Well, the one question I had for you was about the loan agreements that the various defendants submitted. Everybody said in their reply brief that I can consider those at 12(b)(6) because their authenticity isn't challenged, but I read the plaintiff's briefs as challenging their authenticity. It seemed to me to be pretty clear. They said things like there is no proof these are authentic and we object.

(Doc. 189-4, p. 4).

It would appear Generations is arguing that a question by the Court directed to another litigant should have been answered instead by Plaintiff's counsel and that Plaintiff's

counsel's unwillingness to interrupt the Court or defense counsel's own presentation of oral argument is "bad faith." Generations has cited no authority that such circumstances are sanctionable under § 1927.

***Opposition to Generations' Renewed Motion***: Generations claims that Plaintiff's counsel's opposition to Generations' renewed motion to dismiss (Doc. 113) was also made in bad faith; however, as Generations concedes, Plaintiff's counsel simply "objected to the renewed motion on the ground that Generations had 'failed to establish any of the three recognized grounds for which courts in this judicial District will reconsider an interlocutory order under Federal Rule of Civil Procedure 54(b).'" (Doc. 189, p. 5). Again, an argument with which this Court agreed. (*see* Doc. 128). Plaintiff's counsel's successful procedural argument was unrelated to the separate earlier argument that the loan agreement was inadmissible hearsay, which is the only thing Generations suggests was made in bad faith.

***Appeal to the Fourth Circuit:*** Remarkably, Generations wishes this Court to view the appeal that *Generations filed* with the Fourth Circuit as part of Plaintiff's conduct that supposedly unreasonably and vexatiously multiplied the proceedings. (Doc. 189, pp. 6-8). As it did with the March 2013 oral argument, Generations searches the appellate briefing and transcript of oral argument for snippets that suggest some misrepresentation by Plaintiff's counsel. But, even assuming *arguendo* that Plaintiff's counsel were required to abandon an authenticity challenge to Generations' own evidence, which they were not, Generations' efforts still fall flat because it appealed *jointly* with co-Defendants Bay

Cities and BMO Harris—both of which sought to introduce unauthenticated loan agreements into evidence. Thus, at best, Generations is taking issue with summaries of fact or concise legal arguments that lump Generations in with its co-appellants— something which could not possibly be considered bad faith or an unreasonable and vexatious multiplication of proceedings by Plaintiff in an appeal Generations itself filed and elected to proceed jointly with other defendants.

*Arbitration-Related Discovery:* Generations includes the arbitration-related discovery *it jointly requested* (Doc. 157) as additional alleged vexatious conduct by Plaintiff. ("Generations was forced to participate in arbitration-related discovery and prepare yet another motion to dismiss and a reply in support of that motion." (Doc. 189, p. 9)). Yet, Generations cannot identify a single action by Plaintiff's counsel during arbitration-related discovery that was in bad faith. Generations admits that Plaintiff, in his first set of interrogatory responses, responded that he "does not dispute the authenticity of the Loan Agreement." (Doc. 189-9, p. 5). Had it wished to ascertain whether Plaintiff had a copy of the Western Sky loan agreement, Generations could have sought arbitration-related discovery at any point during the last two years. *See, e.g., Dillon v. BMO Harris Bank, N.A.*, No. 1:13CV897, 2015 WL 6619972, at *3 (M.D.N.C. Oct. 30, 2015) ("Accordingly, if a party challenges the enforceability of an arbitration agreement, courts generally permit discovery regarding the formation and performance of the arbitration

provision."). Generations' failure to seek discovery is its own error that cannot be cured with a sanctions motion against Plaintiff.[4]

## IV. GENERATIONS' AUTHORITIES ARE FACTUALLY DISTINGUISHABLE FROM THE CONDUCT IT ALLEGES HERE

Generations cites three cases, all outside the Fourth Circuit, in support of its notion that a litigant acts in bad faith when it raises a valid hearsay objection to a document. Generations begins with a (non-pinpoint) citation to *Fenje v. Feld*, 301 F. Supp. 2d 781 (N.D. Ill. 2003), *aff'd*, 398 F.3d 620 (7th Cir. 2005), which does not even address sanctions and simply states in *dicta* that "even if a party fails to authenticate a document properly or to lay a proper foundation, the opposing party is not acting in good faith in raising such an objection if the party nevertheless knows that the document is authentic." *Id*. at 789. Even assuming this were an accurate statement of the law in the Fourth Circuit, the opinion in *Fenje* is rendered on summary judgment (and not a pre-discovery motion) wherein the objection in question appeared to be directed at an uncertified deposition transcript:

> For example, although a deposition transcript should be certified by the court reporter, objecting that the certification is missing is inappropriate and merely obstructive when the objecting party has no basis for believing the transcript is inauthentic or inaccurate. This is especially true when the certification is not missing.

---

[4] Generations gives away its game with its Notice of Motion, which seeks not only costs and expenses, but also "to strike any arguments in opposition to arbitration that were raised by Plaintiff after March 6, 2014 …," (Doc. 188, p. 2) a remedy that is not available under § 1927 and which no court would award even if Generations' version of the facts was correct. Sanctions motions are not to be used as strategic do-overs.

*Id.* There is no comparison between raising a technical objection to the introduction of a transcript of a deposition taken by the parties in the very same case on summary judgment and an objection requiring a movant to authenticate the purported agreement to arbitrate on a pre-answer motion to compel arbitration.

Generations' second authority is *In re Interstate Steel Setters, Inc.*, 65 B.R. 312 (Bankr. N.D. Ill. 1986), a bankruptcy court decision concerning the "conduct of counsel in certain events that occurred during the trial." *Id.* at 313. Significantly the bankruptcy court awarded sanctions because *the original business records objected to at trial had been produced by the objecting party*:

> Mr. Shifflett objected at trial to the authenticity and genuineness of Plaintiff's exhibits, PX–4, PGX–5 and PX–7. Defendants' objections to the authenticity and genuineness of those documents at trial were then unreasonable and vexatious, and were motivated by Leonard S. Shifflett's vexatiousness, obduracy and bad faith. He knew that said exhibits were authentic and genuine and were prepared and maintained by Crane in the ordinary course of Crane's business because he (Mr. Shifflett) had personally furnished the originals of those very documents to Plaintiff's attorney for inspection and photocopying pursuant to the aforesaid request for production of Crane documents and prior court order for production of those documents. Indeed, he held the originals of those documents in his office and produced them at trial after the copies (PX–4, PGX–5, PX–7) were admitted.

*Id.* Even assuming this opinion constitutes persuasive authority in this Court, here Plaintiff has never been in possession of the original loan agreement, and Plaintiff had not produced the copy of the agreement in his possession (because Generations had not asked for it) when it objected to its admission on hearsay grounds.

Generations' final authority is *Baulch v. Johns*, 70 F.3d 813 (5th Cir. 1995), a decision following trial and appeal by the objecting party where the objection was to the evidentiary foundation itself rather than, as here, to the movant's failure to even attempt to lay an evidentiary foundation in the first place:

> In this case, the Autopsy Report is clearly admissible under the same (Fed. R. Evid.) Rule 901 analysis. As submitted to the district court, the Autopsy Report is an eight page, single-spaced document containing an in-depth forensic analysis of Baulch's organ weights, the gunshot entrance and exit wounds, toxicology, etc. The Autopsy Report is signed by the Medical Examiner, Dr. Charles Odem, and by the Acting Chief Medical Examiner, Dr. Jeffrey Barnard. It is also supported by the affidavit of Heather Harvey which establishes that the Autopsy Report was provided to plaintiffs' counsel by Garland Police Chief Terry Hensley in response to the plaintiffs' subpoena duces tecum. While Harvey was not the record custodian of the Autopsy Report, her testimony regarding its chain of custody after it was produced, combined with the distinctive characteristics of the document itself, is certainly sufficient to authenticate the Autopsy Report under Rule 901.

*Id.* at 816.

Even if the case was not otherwise distinguishable, the circumstances of *Baluch* are completely different in that the document being challenged was, once again, produced *by the objecting party itself*:

> Ms. Harvey is an employee of the plaintiffs' attorney. Her affidavit states in paragraph 6:
>
> Exhibit "3" to this affidavit is a true copy of the Autopsy Report documenting the autopsy performed on Kenneth Baulch on February 15, 1991 at the Southwestern Institute of Forensic Sciences. Garland Police Chief Terry Hensley, who is also represented in this action by Defendant's counsel, produced this report to Plaintiffs on May 28, 1993 in response to Plaintiffs' subpoena duces tecum, dated May 11, 1993.

*Id.*

Generations has no binding authority in support of its view that, in the Middle District of North Carolina, movants are excused from laying proper foundations for the documents they seek to have admitted into evidence and that, furthermore, a proper hearsay objection to a document's admission is "bad faith" under any circumstances.

## V. PLAINTIFF HAD A GOOD FAITH FACTUAL BASIS TO CHALLENGE THE AUTHENTICITY OF THE WESTERN SKY LOAN AGREEMENT

Finally, even were the Court willing to accept Generations' argument that Plaintiff's valid evidentiary objections were somehow intended to delay and multiply these proceedings, Plaintiff also had a good faith *factual* basis for challenging the authenticity of the Western Sky loan agreement—the copy in Plaintiff's possession does not appear to have been printed from the Western Sky website at the time Plaintiff took out the loan.

Indeed, the copy of the loan agreement in Plaintiff's possession, which was produced in discovery and is identical to the loan agreement retrieved from Plaintiff's laptop computer as part of the forensic examination (*see* Moore Dec., ¶ 6; Exhibit 1 to the Declaration of Eric A. Pullen (Doc. 189-3, pp. 6-11)), has several noteworthy characteristics. For example, the time-stamp in the top left hand corner of the document indicates that Plaintiff faxed the loan agreement to his attorneys on October 1, 2013— approximately four months after he took out the loan. *See* Moore Dec., ¶ 7. Moreover, while admittedly difficult to read, the URL on the bottom of the third and fourth pages of the document indicates that it was printed from the website of loan servicer Delbert

Services ("http://intranet.delbertservices.com/....."),[5] not Western Sky. *See* Moore Dec., ¶¶ 8, 14 (providing example of Western Sky agreement with Western Sky URL). Had Plaintiff pursued his argument challenging the authenticity of the Western Sky loan agreement presented by Generations, he would have sought to present evidence establishing that Delbert Services maintained an active website between May 31, 2013 and October 1, 2013 that permitted Western Sky borrowers to log-in and print their Western Sky loan documents via the Delbert Services intranet site. *See* Moore Dec., ¶¶ 9-13. This is significant because it leaves open the possibility that the loan agreement Western Sky transferred to Delbert Services was not the same document that Plaintiff clicked through when he took out the loan in May 2013. *See Hayes v. Delbert Services Corp.*, Case No. 15-1170 (4th Cir. Feb. 2, 2016) (Doc. 201-1, p. 5) (describing how it was Western Sky's practice to transfer its loans "to an assortment of allied servicing and collection firms," including Delbert Services).

Far from being a conspiracy theory, there are objective reasons why Plaintiff had reason to suspect the loan agreement might not be authentic. First, it is well documented that Western Sky changed the language in its loan agreements at some point to include a "less objectionable" (albeit completely contradictory) arbitration clause. *See* Moore Dec., ¶¶ 15-16 (providing examples of differing arbitration language in Western Sky agreements). This was recognized by the Fourth Circuit in *Hayes*:

---

[5] *See* Doc. 189-3, pp. 8-9. While the Delbert Services website is no longer active, preliminary evidence suggests that it was active during this period in 2013. *See* Moore Dec., ¶¶ 10-13.

A final noteworthy provision of the arbitration agreement says that the borrower "shall have the right to select" the American Arbitration Association ("AAA"), Judicial Arbitration and Mediation Services ("JAMS"), or another organization to "administer the arbitration." J.A. 155. **This provision was not present in earlier versions of the Western Sky arbitration agreement**. And although there is some dispute on this point . . . it seems as if the provision was added by Western Sky to compensate for the fact that the tribal arbitration mechanism set out in the agreement proved in practice to be illusory.

(Doc. 201-1, p. 8) (emphasis added).

Second, Western Sky is notoriously unscrupulous. At least 21 states and the Consumer Finance Protection Bureau and Federal Trade Commission have taken legal action against Western Sky (often including its "affiliates" CashCall, WS Funding and Delbert) for unlawfully making loans without proper state licensure and in violation of state usury laws, for consumer protection violations, misrepresentations, and/or for illegal debt collection practices. *See* Moore Dec., ¶ 17.

Moreover, Plaintiff was asked multiple times at his deposition whether he printed the Western Sky loan agreement at the time he took out the loan. While initially responding "I printed it out on the Internet when I took out the loan" (Doc. 180-1; 91:5-6), Plaintiff later clarified, no less than seven times, that he could not recall when he printed out the Western Sky loan agreement in his possession:

> **Q. (MR. RIEDER) Mr. Dillon, you were asked some questions regarding the Western Sky agreement that was Exhibit 9. Do you have that in front of you?**
>
> A. Oh. Yeah, I got it.
>
> **Q. Okay, what is the -- what is the date of that loan application and agreement?**

A. May the 30th, 2013.

**Q. You testified that you printed that document on your printer?**

A. That's correct.

**Q. When did you print it?**

A. I don't remember the date that I printed it.

**Q. Was it near in time to the date you took out the loan?**

A. I don't remember the exact date whenever I printed it.

Doc. 180-1; 129:3-20.

**Q. (MR. RIEDER) The complaint in this action was – was dated October 2013. Had you printed out the Western Sky agreement at that time?**

A. I don't remember the exact dates that I printed it out.

**Q. I understand you don't remember the exact dates, but that's not my question. My question is do you know if you had printed out the Western Sky agreement as of the time the lawsuit began.**

A. I don't remember when I printed it out.

Doc. 180-1; 131:14-25.

**Q. Did you print out the document the same day you gave it to your lawyers?**

A. I -- I don't understand the question.

**Q. Did you hit print on the printer in order to print out that Exhibit 9 on the same day that you provided the copy of the printed document to your lawyers?**

A. I don't remember.

Doc. 180-1; 132:16-23.

Even after answering his own attorneys in the affirmative that it was *possible* Plaintiff printed out the loan agreement in order to fax it in as part of his loan application, Plaintiff was still unable to recall when he printed out the agreement:

> **Q. (MR. RIEDER) And so if -- -- if that's what you did, then you printed it out around the same time you took out the loan. Correct?**
>
> A. As -- as I said before, I don't remember when I printed it out. I don't know exact dates.
>
> **Q. I understand you don't know exact dates, but you just testified in response to questions from your counsel that you believe you printed it out in order to fax it back in connection with taking out the loan. Right?**
>
> A. As I said before, I don't know the exact date that were -- that I printed it out on. I don't know -- I don't know exact dates.
>
> **Q. It wasn't this year, though, was it?**
>
> A. I don't remember what year it was.

Doc. 180-1; 138:2-16.

> **Q. (MR. PULLEN) Mr. Dillon, I want to ask you just a couple more questions, because I want to make sure I understand your testimony. I believe you told me that when you got the loan from Western Sky, you printed out the loan agreement that day. Is that your testimony?**
>
> A. I don't understand the question.
>
> **Q. The day you printed your Western Sky loan agreement, the one that you got your hands on there---**
>
> A. --- Yeah.
>
> **Q. --- Did you print it the day you applied for the loan?**
>
> A. I don't remember what date I printed it out.

Doc. 180-1; 138:2-16.

This is noteworthy because if Plaintiff printed the loan agreement from the Delbert Services website weeks or months after he took out the loan—as opposed to from the Western Sky website at the time he took out the loan—then it is perfectly reasonable to question whether the agreement Plaintiff printed was the same agreement he clicked through over the Internet in May 2013. Plaintiff's testimony, coupled with the objective evidence that Plaintiff did not send the agreement to his attorneys until over four months after he took out the loan, the fact that the agreement in Plaintiff's possession contains a URL from the Delbert Services website and not Western Sky, and the fact that Western Sky issued loan agreements with varying arbitration language, raises a viable *factual* basis for challenging the authentication of the Western Sky loan agreement offered into evidence by Generations. Had Plaintiff decided to pursue his authentication challenge, he would have sought to present evidence establishing these facts. *See* Moore Dec., ¶¶ 13, 18. Thus, while Plaintiff made the strategic decision to drop his challenge to the authenticity of the Western Sky loan agreement presented by Generations, there is plenty of objective evidence demonstrating that Plaintiff could have asserted a good faith challenge to the authenticity of the document—notwithstanding the copy of the agreement Plaintiff had in his possession.

## VI.  PLAINTIFF SHOULD BE AWARDED HIS COSTS AND ATTORNEYS' FEES IN DEFENDING AGAINST THIS FRIVOLOUS MOTION.

As outlined above, none of the facts present in this case even remotely indicate any improper behavior, let alone anything that would warrant the extreme measure of "bad faith" sanctions under Section 1927. Generations' desperate attempt to use a

sanctions motion to avoid having to confront Plaintiff's Opposition to Generations' renewed motion to dismiss is particularly frivolous. *See* Doc. 189, p. 14 (seeking to strike "any arguments raised by Plaintiff in opposition to Generations' current motion to dismiss that were not raised in opposition to Generations' original motion to dismiss as Plaintiff's ability to raise these new arguments was occasioned solely by their misleading statements and conduct"). Courts have long recognized that unfounded sanction motions constitute an abusive litigation tactic that is in direct contravention to the purpose of the Federal Rules:

> The Court does not take motions for sanctions lightly. Such motions, upon mere filing, can damage an attorney's reputation, immediately call upon that attorney to defend his integrity, and can place a chilling effect on the Court's bar, preventing its members from representing their clients with vigor and creative advocacy, or from seeking to persuade the Court to move the law in a new direction. Such motions, when frivolously filed, will not only harm the attorney that is its target, but may harm the Court as well by affecting the quality of the advocacy before it. For this reason, frivolous motions for sanctions that harass the opposing party's attorney, chill that attorney's zealous representation of his client, and needlessly increase the cost of litigation cannot go unpunished.

*Atl. Recording Corp. v. Heslep*, No. 4:06-CV-132-Y, 2007 WL 1435395, at *8 (N.D. Tex. May 16, 2007).

Prior to its filing, Plaintiff's counsel specifically cautioned Generations' counsel that Plaintiff would seek his costs and fees in defending against this patently frivolous motion. *See* Moore Dec., ¶ 20. Although Plaintiff believes a cross-motion for sanctions against Generations and its counsel is justifiable, Plaintiff would prefer not to further waste the time and resources of the parties and Court on matters that do not concern the merits of this case. Accordingly, Plaintiff requests only that the Court award under its

19

inherent power Plaintiff's costs and attorneys' fees in defending against this motion. *See Atl. Recording*, 2007 WL 1435395, at *8 (ordering defendant's attorney to "personally, pay Plaintiffs' reasonable costs, including attorney's fees, incurred in defending against his client's baseless motion for sanctions"); *Cheren v. Compass Bank*, No. CV-12-00206-PHX-JAT, 2013 WL 3199695, at *2 (D. Ariz. June 24, 2013) (ordering plaintiffs to reimburse defendants "to defend against Plaintiffs' frivolous motion for sanctions"); *Tenkku v. Normandy Bank*, 348 F.3d 737, 744 (8th Cir. 2003) (district court did not abuse its discretion in awarding party costs and fees it incurred in defending frivolous motion for sanctions). If the Court is so inclined, Plaintiff will submit an application for his costs and fees incurred in defending against this motion, supported by declaration and relevant billing records, as soon as practicable and as so ordered by the Court.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Generations' Motion for Sanctions and award Plaintiff his costs and attorneys' fees in defending against this motion.

Respectfully submitted, this the 5th day of February, 2016.


/s/ F. Hill Allen
F. Hill Allen
North Carolina State Bar No. 18884
E-mail: hallen@tharringtonsmith.com
**THARRINGTON SMITH, L.L.P.**
P.O. Box 1151
Raleigh, NC 27602-1151
Telephone: 919-821-4711
Facsimile: 919-829-1583

**STUEVE SIEGEL HANSON LLP**
Norman E. Siegel
Steve Six
J. Austin Moore
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel: (816) 714-7100
Fax: (816) 714-7101
siegel@stuevesiegel.com
six@stuevesiegel.com
moore@stuevesiegel.com

**DARREN KAPLAN LAW FIRM, P.C.**
Darren T. Kaplan
1359 Broadway, Suite 2001
New York, NY 10018
Tel: (212) 999-7370
Fax: (646) 390-7410
dkaplan@darrenkaplanlaw.com

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei
Jeffrey D. Kaliel
2000 L Street, N.W.
Suite 808
Washington, D.C. 20036
Tel: (202) 973-0900
Fax: (202) 973-0950
hzavareei@tzlegal.com
jkaliel@tzlegal.com

**KOPELOWITZ OSTROW P.A.**
Jeffrey M. Ostrow
One West Las Olas Blvd., Ste. 500
Fort Lauderdale, Florida 33301
Tel: (954) 525-4100
Fax: (954) 525-4300
ostrow@KOlawyers.com

**Counsel for Plaintiff and the Class**

## CERTIFICATE OF SERVICE

I certify that on this 5th day of February 2016, I electronically filed the foregoing

paper with the Clerk of the Court using the ECF system, which will send notification of

the filing to the attorneys on that system.

By: */s/ F. Hill Allen*
F. Hill Allen