UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:13-cv-897

| | |
|---|---|
| JAMES DILLON, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BMO HARRIS BANK, N.A., FOUR OAKS BANK & TRUST CO., a North Carolina Chartered Bank, GENERATIONS FEDERAL CREDIT UNION, and BAY CITIES BANK, a Florida State-Chartered Bank,<br><br>Defendants. | Judge Catherine C. Eagles |

## PLAINTIFF JAMES DILLON'S SUR-REPLY TO DEFENDANT GENERATIONS FEDERAL CREDIT UNION'S MOTION FOR SANCTIONS

F. Hill Allen
**THARRINGTON SMITH, L.L.P.**
P.O. Box 1151
Raleigh, NC 27602-1151
Telephone: 919-821-4711
Facsimile: 919-829-1583
hallen@tharringtonsmith.com

Darren T. Kaplan
**DARREN KAPLAN LAW FIRM, PC**
1359 Broadway, Suite 2001
New York, NY 10018
Tel: (212) 999-7370
Fax: (646) 390-7410
dkaplan@darrenkaplanlaw.com

*Other Attorneys for Plaintiff on Signature Page*

A federal court possesses the inherent power to regulate litigants' behavior and to issue sanctions where there is "bad-faith conduct or willful disobedience of a court's orders[.]" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47, (1991). However, "[a] court must … exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Id*. at 50. Indeed, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Id*. at 44; *see also United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461-62 (4th Cir. 1993) (inherent powers to sanction "must be exercised with the greatest restraint and caution, and then only to the extent necessary"). In cases where courts have exercised their inherent authority to sanction litigants, counsel's conduct has been egregious and supported by a significant evidentiary record. *See* Declaration of Kathryn Bradley (discussing *Chambers* and its progeny) (Doc. 244-1).

Here, there is no evidence that Plaintiff's counsel acted in bad faith or sought to mislead the Court or deliberately delay these proceedings. Plaintiff's counsel have explained their good faith basis for their actions, detailed their litigation strategy as to why they dropped the authentication challenge, and submitted declarations of three legal professors who each concluded that Plaintiff's counsel did nothing more than zealously advocate on behalf of their client. Plaintiff's counsel – who have never been sanctioned in any forum – did not intend or engage in any impropriety, much less the egregious conduct required to satisfy the heightened legal standard for sanctions.

1

## I. The Loan Agreement Plaintiff Faxed To His Counsel Was NOT Printed Out On The Date He "Executed The Loan Agreement."

Generations maintains it is "undisputed" that "Plaintiff testified that he printed a copy of the Loan Agreement on the day he executed the Loan Agreement (which was May 30, 2013) …" But, as Plaintiff has already pointed out multiple times, this purported fact is hotly-disputed. *See, e.g.,* Doc. 244, p. 3 ("Mr. Dillon clarified at the same deposition— *no less than seven times*—that he did not remember when he printed the loan document."). The objective evidence also contradicts Generations' claim. Plaintiff presented evidence establishing that the loan agreement faxed to Counsel bore the URL of Delbert Services, a several-times-removed "servicing agent" of Western Sky. Generations calls the Delbert URL a "red herring," but the URL conclusively demonstrates that the agreement Plaintiff faxed to his counsel could not have been printed from Western Sky's website (*see* Doc. 244, pp. 4-5), and so could not have been printed out "on the day [Plaintiff] executed the Loan Agreement." This fact, combined with the fact that the loan agreement was produced from the records of another party, caused Plaintiff's counsel to have reasonable concern about its authenticity. *See Dillon v. BMO Harris Bank, N.A.*, No. 1:13-CV-897, 2016 WL 1175193, at *4 (M.D.N.C. Mar. 23, 2016) ("Click-wrap contracts like the one at issue here pose special risks of fraud and error . . . That risk is even higher when the party maintaining the records and the party producing the records are not the same.").

Rather than address this evidence directly, Generations suggests the evidence presented by Plaintiff was "a *post hoc* excuse" because Plaintiff's counsel did not submit evidence showing that Western Sky has a history of "doctoring" loan agreements. Doc.

255, pp. 6-7. As this Court has recognized, Plaintiff had no obligation to show that Western Sky "doctored" anything until Generations, as the proponent of the arbitration agreement, first produced "credible, admissible evidence which satisfies the Court that there was an arbitration agreement." Doc. 217, p. 6. Generations' failure to meet its initial burden notwithstanding, it is undisputed that Western Sky used differing arbitration language in its various loan agreements. *See Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 673 (4th Cir. 2016).[1] Indeed, given the special risks and concerns this and other courts identified, Plaintiff's counsel had an obligation to challenge the authenticity of the Loan Agreement Generations submitted without any supporting affidavit.[2]

## II. Generations' Reply Changes Its Theory Of Putative Wrongdoing.

On reply, Generations impermissibly shifts focus to events *some five months after* Plaintiff successfully challenged the authenticity of the Loan Agreement to Generations' submission of the Affidavit of Tawny Lawrence ("Lawrence Affidavit") on April 15, 2014. (Doc. 254, p. 5) Generations now claims this affidavit, *which Generations submitted after this Court ruled in Plaintiff's favor*, is "undisputed evidence authenticating the Loan Agreement" (*id.* at p. 5) and that Plaintiff's counsel had some corresponding duty to

---

[1] Likewise, that Plaintiff's counsel asked Mr. Dillon at deposition whether it was *possible* he printed the loan agreement at the time he took out the loan does not establish counsel believed the agreement was authentic when they initially raised their evidentiary challenge 18 months earlier.

[2] Generations' implication that the redaction of fax information from the loan agreement prior to production was part of a scheme to conceal the date on which the loan agreement was provided to Counsel is not credible. That information is attorney-client communication and is routinely redacted to preserve the privilege.

3

Case 1:13-cv-00897-CCE-LPA   Document 258   Filed 07/07/16   Page 4 of 8

"inform the Fourth Circuit that they were in possession of the exact same Loan Agreement authenticated by Generations." (*id.*) But the Lawrence Affidavit is rife with many of the same problems this Court identified with respect to the Declaration of Christopher Muir in its March 23, 2016 decision:

> He does not explain how the electronic document purporting to memorialize the loan agreement was created.… He cannot affirm that the document presented to the Court was presented to Mr. Dillon in the same format.… He is silent about how USFastCash maintained its electronic records or ensured that loan agreements were preserved without alteration or change.… While Mr. Muir says that USFastCash customers generally were directed to a page from which they could print their electronic loan documents for retention … he does not affirm that this page was presented to Mr. Dillon. *Dillon*, 2016 WL 1175193, at *4.

In addition, just like Mr. Muir and AMG, Western Sky "refused to participate in a deposition where Mr. Dillon could ask questions about [Western Sky's] recordkeeping systems and about deficiencies in [Ms. Lawrence's] declaration …" (*Id.* at 3) by evading service of a subpoena (apparently with the aid of the Cheyenne River Sioux Tribal Courts). *See* Affidavit of Attempted Service of Cassidi Reicher. (Doc. 172-5, pp. 2-4) And Western Sky has a history of dishonesty and deceptive conduct that has necessitated enforcement actions by numerous states and the Consumer Finance Protection Bureau (*see* Doc. 246-3). No opposing party or court should be forced to trust an affidavit from an employee of a company subject to so many enforcement actions without additional indicia of truth and certainly. *See* Declaration of Donald H. Beskind ("in the absence of certainty that a document is genuine, my opinion is that, in our adversary system, counsel has an absolute right to hold opposing counsel to their proof.") (Doc. 244-2, p. 13). Left unexplained by

Generations is when or how Plaintiff's counsel should have "inform[ed] the Fourth Circuit that they were in possession of the exact same Loan Agreement authenticated by Generations." (Doc. 255, p. 5) There was no discovery below so the Appendix in the Fourth Circuit did not contain the Delbert loan agreement. New evidence that is not part of the appellate record will be stricken. *See*, *e.g.*, *Moore v. Safeco Ins. Co. of Am.*, 549 F. App'x 651, 653 fn. 1 (9th Cir. 2013) ("we agree with Safeco that the letter and accompanying new evidence should be stricken from the record"). And the issues on appeal were the standard by which the district court would consider defendants' renewed motions—*not* what evidence could be offered on remand. (*See* Statement of Issues, Appeal 14-1728, Doc. 31, pp. 16-17).[3]

### III. Plaintiff Could Still Successfully Challenge the Agreement's Authenticity.

Relying on the flawed Lawrence Affidavit, Generations believes it has "authenticated the Loan Agreement." (Doc. 255, p. 9) This Court's decision regarding the USFastCash loan agreement in *Dillon*, strongly suggests otherwise. Indeed, Plaintiff could likely prevail on an authenticity challenge to the Loan Agreement even now and the challenge would be made in good faith under *Dillon*.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny

---

[3] Generations also implies that plaintiff should have changed strategies to argue the Loan Agreement was unconscionable in the Fourth Circuit. (Doc. 255, p. 7, fn. 2) However, the Fourth Circuit "will not address issues of law and fact not considered in the court below." *Judicial Watch, Inc. v. United States*, 84 F. App'x 335, 338 (4th Cir. 2004).

Generations' Motion for Sanctions and award Plaintiff his costs and attorneys' fees in defending against this motion.

Dated: July 7, 2016

Respectfully submitted,

/s/ F. Hill Allen
F. Hill Allen
North Carolina State Bar No. 18884
E-mail: hallen@tharringtonsmith.com
**THARRINGTON SMITH, L.L.P.**
P.O. Box 1151
Raleigh, NC 27602-1151
Telephone: 919-821-4711
Facsimile: 919-829-1583

**STUEVE SIEGEL HANSON LLP**
Norman E. Siegel
Steve Six
J. Austin Moore
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel: (816) 714-7100
Fax: (816) 714-7101
siegel@stuevesiegel.com
six@stuevesiegel.com
moore@stuevesiegel.com

**DARREN KAPLAN LAW FIRM, P.C.**
Darren T. Kaplan
1359 Broadway, Suite 2001
New York, NY 10018
Tel: (212) 999-7370
Fax: (646) 390-7410
dkaplan@darrenkaplanlaw.com

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei
Jeffrey D. Kaliel
2000 L Street, N.W.
Suite 808
Washington, D.C. 20036
Tel: (202) 973-0900
Fax: (202) 973-0950
hzavareei@tzlegal.com
jkaliel@tzlegal.com

**KOPELOWITZ OSTROW P.A.**
Jeffrey M. Ostrow
One West Las Olas Blvd., Ste. 500
Fort Lauderdale, Florida 33301
Tel: (954) 525-4100
Fax: (954) 525-4300
ostrow@KOlawyers.com

**Counsel for Plaintiff and the Class**

## CERTIFICATE OF SERVICE

I certify that on this 7th day of July 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of the filing to the attorneys on that system.

By: */s/ F. Hill Allen*
F. Hill Allen

i