IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JAMES DILLON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13-CV-897 |
| | ) | |
| BMO HARRIS BANK, N.A., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

This is a civil RICO lawsuit arising out of online loans the plaintiff, James Dillon, received at predatory interest rates. The Court previously found that three of Mr. Dillon's lawyers and their law firms multiplied the proceedings and violated their duty of candor by hiding a document that was potentially dispositive of a dispute over whether there was an agreement to arbitrate and by implying to the Court that the document did not exist. The Court granted a motion for sanctions filed by a defendant, Generations Community Federal Credit Union, and held the matter open for determination of a monetary sanction. The sanctioned attorneys filed a motion for reconsideration, which the Court held open as to the issue of law firm liability and otherwise denied.

Having reviewed the supplemental briefing and evidence, the Court will require two attorneys, Steve Six and Darren T. Kaplan, and their firms, Stueve Siegel Hanson LLP and Darren Kaplan Law Firm, P.C., to jointly pay $150,000 to Generations as a sanction. The Court finds that the third attorney, J. Austin Moore, will be jointly

responsible for $100,000 of this sanction.  The Court further concludes that the law firms fully participated in this case and in the violation of the duty of candor to the Court, and so the Court will deny the motion for reconsideration.

I.      BACKGROUND

As explained in detail in the Court's previous order granting the motion for sanctions, Mr. Six, Mr. Moore, Mr. Kaplan, and their law firms acted unreasonably, in bad faith, and vexatiously, thereby multiplying the proceedings and violating their duty of candor to the Court.  *See generally* Doc. 264, *available at Dillon v. BMO Harris Bank, N.A.*, No. 13-CV-897, 2016 WL 5679190 (M.D.N.C. Sept. 30, 2016).  They objected to the Court's consideration of an arbitration agreement proffered by Generations while hiding, for two years, the existence of an identical copy in the possession of their client; they misled the Court about the existence of their client's copy; and they caused an unnecessary appeal.  *See* Doc. 264 at 62.  The Court concluded that sanctions were appropriate under 28 U.S.C. § 1927 and in the Court's inherent authority.  *See id.* at 38, 49-50.

The Court further determined that Generations' attorney's fees from a renewed motion to dismiss and the first appeal were "excess" costs recoverable under § 1927 and were appropriate as a sanction for violating the duty of candor.  *Id.* at 49-50, 56-59.  The Court directed the sanctioned attorneys and Generations to confer about the amount of reasonable fees and to provide supplemental briefing.  *Id.* at 57-58.  The Court held open the issue of whether a monetary sanction in addition to the attorney's fees would be appropriate.  *Id.* at 58-59.

The sanctioned attorneys and Generations agreed on a reasonable amount for the attorney's fees and expenses incurred by Generations in connection with the renewed motion to dismiss and the first appeal. Doc. 268 at ¶ 1. They disagreed as to whether Generations should also recover fees and expenses incurred in prosecuting the motion for sanctions and, if so, the amount of those fees. *Id.* at ¶ 2. The sanctioned attorneys and Generations have now briefed this issue. Docs. 270, 271, 272.

## II. AMOUNT OF SANCTION

### A. Attorney's Fees and Expenses Associated with the Renewed Motion to Dismiss and First Appeal

Sanctioned counsel and Generations agree that $70,147.70 is a reasonable amount for the attorney's fees and expenses associated with the renewed motion to dismiss and the first appeal. Doc. 268 at ¶ 1. The Court has reviewed the evidence, and it finds that this is a reasonable amount. The Court will order the sanctioned attorneys to pay $70,147.70 to Generations for those proceedings.

### B. Attorney's Fees and Expenses Associated with Prosecuting the Sanctions Motion

As of late October 2016, Generations had incurred an additional $118,417.33 in attorney's fees and expenses while prosecuting the motion for sanctions. *See* Doc. 270-1 at ¶ 8; Doc. 270-2 at ¶ 8. Generations asks that the Court require the sanctioned attorneys to pay this amount as well. Doc. 270 at 5. The sanctioned attorneys object, contending that the Court's initial order did not require the payment of these fees and that the Fourth Circuit prohibits requiring sanctioned attorneys from paying fees incurred in litigating a

3

sanctions motion. *See* Doc. 271 at 2-3. In the alternative, they ask the Court to review Generations' attorneys' bills *in camera*. *Id.* at 4.

1. **Overview of Relevant Authorities**

Section 1927 authorizes recovery of attorney's fees and expenses "reasonably incurred because of" the vexatious conduct. 28 U.S.C. § 1927. Generations made a reasonable decision to file a sanctions motion, given the egregious conduct of sanctioned counsel in hiding the existence of Mr. Dillon's copy of the disputed contract. The plain language of the statute appears to cover fees and costs from litigating a sanctions motion, and many courts have so held. *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1298, 1302 (11th Cir. 2010) (holding that the plain language of § 1927 supports including "costs arising from the sanctions proceedings in the sanctions award," and affirming such an award); *Truck Treads, Inc. v. Armstrong Rubber Co.*, 868 F.2d 1472, 1474-75 (5th Cir. 1989) (upholding award under Rule 11 and § 1927 that included fees "incident to the sanctions motion itself"); *see In re Royal Manor Mgmt., Inc.*, 525 B.R. 338, 365-66 (B.A.P. 6th Cir. 2015) (affirming sanctions imposed under § 1927 and the bankruptcy court's inherent authority and noting that such sanctions awards may include fees incurred in obtaining the sanctions award), *aff'd*, 652 F. App'x 330 (6th Cir. 2016), *cert. denied sub nom. Grossman v. Wehrle*, 2017 WL 276189 (U.S. Jan. 23, 2017); *In re Tutu Wells Contamination Litig.*, 120 F.3d 368, 387-88, 390 (3d Cir. 1997) (upholding sanctions in court's inherent authority, including attorney's fees incurred in prosecuting sanctions motion), *overruled on other grounds*, *Comuso v. Nat'l R.R. Passenger Corp.*, 267 F.3d 331, 339 (3d Cir. 2001); *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1273-

4

74 (11th Cir. 2006) (dissent of Hill, J.) (collecting cases for the proposition that fees incurred in sanctions motions are recoverable).

In *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991), a case involving inherent authority, the Supreme Court upheld a sanctions award that included attorney's fees incurred in filing a sanctions motion. The original award by the district court included "attorney's fees and expenses paid . . . for services rendered in connection with the sanctions portion of this suit," *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 124 F.R.D. 120, 143 (W.D. La. 1989), *aff'd*, 894 F.2d 696 (5th Cir. 1990), and the Supreme Court did not indicate any misgivings about requiring the sanctioned lawyers to pay those fees. *See Chambers*, 501 U.S. at 50-51. Indeed, the Court emphasized that making the prevailing party whole was one of the purposes of a sanction in the Court's inherent authority. *Id.* at 46 (citing *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978)) (holding that sanctions serve the "dual purpose" of vindicating judicial authority and making the prevailing party whole).

In a case predating *Chambers*, the Fourth Circuit expressed a more cautious approach to including attorney's fees related to the sanctions motion itself. That case, *Blue v. U.S. Dep't of Army*, held that courts ordinarily should not award attorney's fees for the costs of prosecuting motions for sanctions, even if those motions are successful. *See* 914 F.2d 525, 548-49 (4th Cir. 1990). However, *Blue* does not absolutely prohibit awarding attorney's fees incurred in prosecuting sanctions motions, and it upheld such sanctions in part. *Id.*

5

Case 1:13-cv-00897-CCE-LPA   Document 285   Filed 02/10/17   Page 5 of 20

In *Blue*, the defendants sought sanctions under Rule 11, Rule 16, § 1927, and "the bad faith exception to the American Rule." *Id.* at 533. The district court granted the motion and awarded attorney's fees incurred as a result of the misconduct, including fees incurred in prosecuting the sanctions motion. *Id.* at 532-33, 548. The Fourth Circuit agreed the conduct was sanctionable and affirmed certain sanctions against the plaintiffs and their senior lawyer. *Id.* at 544-45, 546-48. The court set aside sanctions imposed on a junior associate and made other revisions to the district court's order. *Id.* at 545-46, 548-50.

As is most relevant here, the Fourth Circuit set aside the district court's award of sanctions against plaintiff's counsel for the fees the defendants incurred in the sanctions proceeding itself, but it upheld such sanctions against the individual plaintiffs. *Id.* at 549. The court noted that counsel's sanctionable conduct occurred only in discovery and at trial, where plaintiff's counsel neither investigated the facts underlying their clients' claims nor adequately examined discovery materials. *Id.* at 548-49. No sanctionable conduct by the attorneys occurred during sanctions hearings. *Id.* On the other hand, the individual plaintiffs "engaged in numerous instances of untruthfulness during the course of their testimony at the sanctions hearing," and thus sanctions against them were appropriate. *Id.* at 549. In conclusion, the Court stated that while "[l]itigants should be able to defend themselves from the imposition of sanctions without incurring additional

6

sanctions," a categorical rule against such sanctions was not appropriate because it "would . . . license the wholesale abuse of [sanctions] hearings." *Id.* at 548-49.[1]

After *Blue*, an amendment to Rule 11 explicitly allows for attorney's fees incurred in filing a successful sanctions motion. Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment ("[T]he court may award to the person who prevails on a motion under Rule 11 . . . reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion."). As discussed *supra* pp. 4-5, other circuits have included the attorney's fees incurred in filing a § 1927 motion in sanctions awards and the Supreme Court has implicitly approved such attorney's fees in an inherent authority case. No party has identified a post-*Blue* case where the Fourth Circuit applied or discussed *Blue* to decide whether § 1927 or the Court's inherent authority authorize a court to include attorney's fees incurred in prosecuting a sanctions motion.[2] Nonetheless, the Fourth Circuit has not overruled or limited *Blue*'s restrained approach and *Blue* is consistent with the general principle that courts should be cautious when imposing sanctions. *See, e.g., Chambers*, 501 U.S. at 44; *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980).

---

[1] In deciding the case, the Fourth Circuit did not distinguish between the various sources of sanctioning power. *Blue*, 914 F.2d at 534.

[2] In *Brubaker v. City of Richmond*, 943 F.2d 1363, 1387 (4th Cir. 1991), a Rule 11 case, the Fourth Circuit rejected an award of sanctions for the costs of the sanctions motion itself. The *Brubaker* opinion relied in part on *Blue*, *see id.*, but noted that neither § 1927 nor inherent authority sanctions were involved, *id.* at 1382 n.25, which distinguishes it from the situation here.

7

### 2. Amount of Fees Incurred by Generations

The Court has reviewed the evidence provided by Generations of its fees and, while it is a large amount, the amount is reasonable. In addition to the initial briefing on the motion for sanctions, Generations incurred attorney's fees as a result of numerous complications in the sanctions litigation caused by Mr. Dillon's counsel. Sanctioned counsel asked the Court to consider certain materials *in camera*, Doc. 245 at ¶ 8, submitted three expert declarations of law professors to one of their later briefs, Docs. 244-1 to -3, and repeatedly raised new issues and purported facts in their defense. *See, e.g.*, Doc. 246 at 4 (making a factual assertion based on "correspondence with [Mr.] Dillon at the start of the case," but not attaching or adequately describing that correspondence until the Court ordered it to do so; *see* Text Order 07/13/2016), and at 6 (asserting, for the first time, in a supplemental brief, that the process by which Mr. Dillon obtained his copy of the loan "certainly involved multiple transfers between multiple Western Sky affiliates over a period of months"). The Court also required supplemental briefing. Doc. 239.

Mr. Dillon's attorneys raised numerous arguments in opposition to the motion for sanctions. *See* Doc. 264 at 31-34, 39-48. Several of these arguments were exaggerated or unsupported, but Generations nonetheless had to evaluate, investigate, and answer each of them. *See generally* Docs. 213, 255. While there was some duplicated effort associated with local counsel's review and work, the duplication was minimal and local counsel's work was particularly appropriate in connection with a sanctions motion. The hourly rates were reasonable. Doc. 270-3 at ¶¶ 13-14; Doc. 270-4 at ¶¶ 16-20.

Considering all the relevant factors, *see Berry v. Schulman*, 807 F.3d 600, 617 (4th Cir. 2015) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)), Generations' fees and expenses were reasonable.

Sanctioned counsel ask the Court to review unredacted copies of the invoices of Generations' lawyers *in camera* to be sure the amount is reasonable. Doc. 271 at 4. Two of Generations' attorneys, Eric Pullen and Jonathan Reich, attached the invoices that their firms had submitted to Generations. Doc. 270-1 at pp. 6-51; Doc. 270-2 at pp. 6-67. While these bills were redacted to exclude time spent on matters unrelated to the sanctions motion, Doc. 270-1 at p. 3; Doc. 270-2 at p. 3, the bills include substantial detail as to the tasks undertaken in connection with the sanctions motion and related matters like the sanctioned counsel's motion to seal. *See, e.g.*, Doc. 270-1 at p. 41 (describing revisions to briefs, research on specific topics, and communications with client and co-counsel). Sanctioned counsel have not explained why the Court needs to review time entries for tasks not associated with the sanctions motion and for which Generations does not seek attorney's fees. *In camera* review is unnecessary.

### 3. Counsel's Conduct During the Sanctions Proceeding Warrants Additional Sanctions

In this case, sanctioned counsel's underlying conduct involved deceit and intentional efforts to mislead the Court. In opposing the sanctions motion, sanctioned counsel continued their efforts to mislead; the Court described some of this conduct in its previous order. *See generally* Doc. 264. The Court need not repeat its findings in full, but will restate some of these acts:

9

- Counsel responded to the motion for sanctions by requesting their own fees in defending against Generations' motion for sanctions. Doc. 202 at 18-20. The basis for this request was "so lacking in merit that it lends further support to the Court's conclusion that [Mr. Dillon's counsel] are acting in bad faith." Doc. 264 at 61-62.

- Counsel offered *post hoc* explanations for their conduct that were not credible, *id.* at 39-42, and the Court explicitly did not believe Mr. Six and Mr. Kaplan when they professed their innocence during the sanctions proceedings. *Id.* at 44-45.

- In opposing the sanctions motion, counsel provided "numerous, inconsistent explanations and exaggerations of the record." *Id.* at 31-34. In particular, counsel denied knowledge of facts in a way that was inconsistent with their questioning of Mr. Dillon at his 2015 deposition, and they did not clarify this issue at the sanctions hearing, despite a direct prompt from the Court. *See id.* at 32. Counsel also stated that certain events were "impossible," without relevant or timely factual support. *See, e.g.*, *id.* at 41 & n.24.

- In sworn testimony, Mr. Kaplan asserted a version of the facts that was inconsistent with the record and with the contentions of his co-counsel. *See id.* at 52 & n.31. The Court found this attempt to rewrite history "inaccurate," "offensive," and "further indicative of his bad faith." *Id.* at 52, 55.

- Counsel made factual representations to one of their retained experts that they never made to the Court, and then they offered this expert's declaration as evidence that sanctions were not appropriate. *Id.* at 46; *see* Doc. 244-3 at ¶ 6 n.1.

- Some of counsel's arguments were "shocking" in their willingness to defend "cynical gamesmanship and deliberate obfuscation." Doc. 264 at 43.

Sanctioned counsel thus defended the sanctions motion in a vexatious way that increased Generations' attorney's fees.

If the Court awards none of these fees, Generations will have spent more litigating sanctions than it spent on the original excess proceedings that were the basis for sanctions. This result would likely dissuade litigants from bringing improper conduct to the attention of the courts. *Norelus*, 628 F.3d at 1299 ("An economically rational party would not relish the prospects of an award that is smaller than the costs of obtaining it."); *In re Tutu Wells*, 120 F.3d at 388 (stating that, after such an outcome, litigants "might allow otherwise sanctionable conduct to go unaddressed"). The problem is worse if the victimized litigants believe the misbehaving lawyers are likely to defend the sanctions motion in an unfair or vexatious manner.

Equitable considerations also favor an additional financial sanction. The sanctioned attorneys have made no argument that their behavior was negligent rather than deliberate. Though sanctioned counsel did not dispute the basic fact underlying the sanctions motion—that sanctioned counsel knew Mr. Dillon had a copy of the arbitration agreement and did not tell Generations or the Court about it for two years—they have not accepted any real responsibility for their actions and their consequences. *See* Doc. 202 at 4 (calling Generations' argument "nonsensical" and absurd); Doc. 246 at 14 (asserting that "Plaintiff's Counsel did absolutely nothing improper or unethical"); Doc. 246-1 at ¶ 29 (testimony by Mr. Kaplan that he does not understand how anyone could see his purpose as malevolent); Doc. 258 at 2 (stating that counsel "did not intend or engage in any impropriety, much less the egregious conduct required . . . for sanctions"); *see also* Doc. 263 at 7 (observation, by the Court, that there was a near-total lack of "any recognition or acknowledgement . . . that the conduct at issue here might have been less

11

than perfect"); Doc. 279 at 25 ("Sanctioned counsel deeply regret *the confusion concerning Plaintiff's original objection . . .*" (emphasis added)). This is not a case where the sanctioned attorneys engaged in a moderate and reasonable defense of their actions. Moreover, there is nothing to indicate that sanctioned counsel are unable to pay a substantial sanction. *See generally* Docs. 246-1 to -3.[3]

Finally, a significant financial sanction is appropriate to emphasize the seriousness of the misconduct and to deter future misconduct. *See* Doc. 264 at 58-59; *Norelus*, 628 F.3d at 1298-99. The attorney's fees Generations incurred as a result of the renewed motion and first appeal are relatively small in context, and, as the Court has explained, the misconduct was outrageous, aspects of the defense were shocking, and sanctioned counsel show no understanding of why their actions were inappropriate. Sanctioned counsel have emphasized their nationwide experience in large class actions, *e.g.*, Doc. 246-1 at ¶¶ 6, 8, and sanctioned counsel and their firms have appeared in courts across the country on behalf of putative class members.[4] Given the brazen nature of their original misconduct, their willingness to engage in cynical gamesmanship and deliberate

---

[3] Sanctioned counsel have waived any argument that they are unable to pay. *See Robeson Def. Comm. v. Britt* (*In re Kunstler*), 914 F.2d 505, 524 (4th Cir. 1990) (treating inability to pay as "reasonably akin to an affirmative defense" to Rule 11 sanctions (quoting *White v. Gen. Motors Corp., Inc.*, 908 F.2d 675, 685 (10th Cir. 1990))); *accord Salvin v. Am. Nat'l Ins. Co.*, 281 F. App'x 222, 226 (4th Cir. 2008) (unpublished) (per curiam) (citing *Kunstler* with approval in § 1927 context).

[4] *E.g.*, *Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331 (11th Cir. 2016) (listing all three sanctioned counsel as counsel of record); *Moss v. First Premier Bank*, 835 F.3d 260 (2d Cir. 2016) (same); *Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229 (10th Cir. 2016) (listing Mr. Six); *Baker v. Microsoft Corp.*, 797 F.3d 607 (9th Cir. 2015) (listing Mr. Kaplan); *Hapka v. CareCentrix, Inc.*, No. 16-2372, 2016 WL 7336407 (D. Kan. Dec. 19, 2016) (listing Mr. Moore).

obfuscation, and the risk of harm to vulnerable putative class members in cases across the country from such inappropriate litigation tactics, a small financial sanction will not be an adequate deterrent.

The sanctioned attorneys contend that the Court's initial order did not require the payment of these fees. Doc. 271 at 4. While this is so, the Court's order did explicitly contemplate an additional financial sanction, should it be appropriate, Doc. 264 at 58-59, and sanctioned counsel have not shown any unfair prejudice from the Court's consideration of Generations' fees incurred in filing the sanctions motion.

Sanctioned counsel also contend that the Fourth Circuit in *Blue* prohibited requiring sanctioned attorneys from paying attorney's fees incurred in connection with the sanctions litigation, absent sanctionable conduct occurring during the sanctions proceedings. *See* Doc. 271 at 2-3. As discussed *supra* pp. 5-6, the holding in *Blue* is not so broad as they contend. Other circuits also disagree with sanctioned counsel's interpretation. *E.g., Norelus*, 628 F.3d at 1300-01 (discussing *Blue*); *In re Tutu Wells*, 120 F.3d at 388 (mentioning *Blue*). In any event, the conduct of sanctioned counsel during the sanctions proceedings demonstrates continuing bad faith. *See* discussion *supra* pp. 9-11.

Generations expended significant time and resources to bring the conduct of sanctioned counsel to the attention of the Court, to evaluate that conduct in the context of an ever-growing litigation history and ever-expanding *post hoc* explanations by sanctioned counsel, and to provide the Court with legal analysis and relevant case law. During the sanctions proceedings, sanctioned counsel demonstrated continuing bad faith,

13

and, to this day, sanctioned counsel do not appear to appreciate the seriousness of their misconduct. An additional sanction is appropriate to emphasize the duty of counsel to be candid with the Court, to deter sanctioned counsel from future misconduct, and to make Generations whole. In its inherent authority, the Court finds it appropriate to impose an additional financial sanction beyond the attorney's fees incurred in connection with the multiplied proceedings.

### 4. Amount of the Additional Sanction

Generations incurred attorney's fees and costs of $118,417.33 in prosecuting the sanctions motion, on top of the fees incurred during the underlying proceedings. Generations asks the Court to require sanctioned counsel to pay this entire amount. Doc. 270 at 1-2. Were it not for the Fourth Circuit's decision in *Blue*, the Court would do so in its discretion, in view of the factors discussed *supra*.

*Blue*, however, tells trial courts that attorneys facing sanctions motions are entitled to defend those motions "without incurring additional sanctions." 914 F.2d at 548. Generations would have no doubt incurred some fees had sanctioned counsel undertaken a measured defense free of additional bad-faith complications and protestations. To be fair, some of sanctioned counsel's arguments in opposition to the sanctions motion were made in good faith. For instance, sanctioned counsel sought to explain their understanding of the law on sanctions and to put their conduct in a favorable context. *See, e.g.*, Doc. 202 at 10-18. *Blue* sought to allow this type of defense. Because the Court must follow the Fourth Circuit's admonition in *Blue* that attorneys should be allowed to present a fair defense to a sanctions motion without fear of additional

14

sanctions, the Court will not award all of Generations' attorney's fees incurred in prosecuting the sanctions motion.

Determining the amount of excess costs and fees under § 1927 sanctions is "inherently difficult, and precision is not required." *Lee v. First Lenders Ins. Servs., Inc.*, 236 F.3d 443, 446 (8th Cir. 2001); *see also Blue*, 914 F.2d at 547 (stating that a "reasonable sanction" may mean sanctions "more or less than the actual costs and fees" created by the offending conduct). Generations incurred about $25,000 in attorney's fees on the sanctions motion before filing it on January 12, 2016.[5] For the fees incurred thereafter, it would be a tedious, time-consuming, and ultimately impossible exercise to comb through Generations' timesheets and attempt to separate the fees incurred as a result of bad faith arguments from fees incurred to respond to more reasonable arguments in defense of the sanctions motion.

In the Court's discretion, weighing all the evidence in light of its extensive experience in the case, the Court finds that an additional sanction of $79,852.30 is appropriate. Combined with the $70,147.70 agreed to by both parties for attorney's fees and expenses from the renewed motion to dismiss and first appeal, Doc. 268 at ¶ 1, this will bring the total sanction to $150,000. This amount goes a long way towards making Generations whole while not punishing sanctioned counsel for asserting matters of legitimate consideration relevant to the sanctions motion. It is sufficiently large that it

---

[5] The parties did not supply this approximation; the Court reached it by looking at the dates, times, and descriptions of the entries on Generations' counsels' timesheets. *See* Docs. 270-1, 270-2.

emphasizes both the significant nature of the misconduct and the importance of being candid with the Court. As discussed *supra* pp. 11-13, a smaller amount would be insufficient to punish sanctioned counsel or to make Generations whole.

### 5. Who Should Pay the Additional Sanctions

#### i. Individual Attorneys

Of the three sanctioned attorneys, Mr. Kaplan and Mr. Six are more culpable because of their level of experience and because of their prominent roles in the vexatious conduct.[6] Mr. Kaplan has practiced law for twenty-five years and has litigated against banks and other financial institutions on behalf of borrowers and depositors for twelve of those years. Doc. 246-1 at ¶¶ 3, 8. Mr. Six has practiced law for twenty-three years and has served as a Kansas district court judge and as the attorney general of Kansas. Doc. 246-2 at ¶¶ 3, 6. These were the lawyers driving the bus during the course of the proceedings related to the arbitration motions, and they have been driving the bus on the sanctions motions. The Court will require Mr. Six and Mr. Kaplan to pay the entire sanctions award.

Mr. Moore, an associate at the firm where Mr. Six is a partner, Doc. 246-2 at ¶ 2 & Doc. 246-3 at ¶ 2, has made no effort to distinguish his culpability from that of Mr. Six and Mr. Kaplan. Nonetheless, a review of Mr. Dillon's deposition shows that Mr. Moore was following Mr. Kaplan's lead. *See* Doc. 180-1 at 36, 134:7-137:24. Mr. Moore's declarations do not otherwise describe his credentials or his experience in the practice of

---

[6] The Court reviewed in detail the specific conduct of each attorney in its earlier order. *See* Doc. 264 at 50-55.

16

law, nor has he indicated an inability to pay. *See* Docs. 203, 246-3. In *Blue*, the Fourth Circuit set aside the sanction on an attorney who, among other things, was an associate following the directions of a senior partner. 914 F.2d at 546. Because Mr. Moore was an associate following, in part, the lead of the other more experienced counsel, the Court will assess a total sanction of only $100,000 against Mr. Moore.

### ii. Firms

The Court has also sanctioned the law firms with which Mr. Six, Mr. Moore, and Mr. Kaplan practice. Doc. 264 at 62. These law firms have asked the Court to reconsider their liability for sanctions and contend that the Court's findings of fact as to the firms are inadequate. *See* Doc. 279 at 24-25.[7]

As noted in the Court's initial order, the Stueve firm had primary responsibility for the factual investigation—or lack thereof—that led to the suppression of the Dillon copy. Doc. 264 at 54. The record reflects that the names of the law firms were on the relevant

---

[7] The motion for sanctions was directed towards the law firms as well as counsel, yet the law firms made no separate arguments and did not contest their liability for the misconduct of their partners and associate until after the Court sanctioned them. *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (noting, in Rule 54(b) context, that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." (internal citation omitted)); *Akeva L.L.C. v. Adidas Am., Inc.*, 385 F. Supp. 2d 559, 565 (M.D.N.C. 2005) ("Public policy favors an end to litigation and recognizes that efficient operation requires the avoidance of re-arguing questions that have already been decided."); *Potter v. Potter*, 199 F.R.D. 550, 553 (D. Md. 2001) (Grimm, M.J., mem. & order) ("It is hard to imagine a less efficient means to expedite the resolution of cases than to allow the parties unlimited opportunities to seek the same relief simply by conjuring up a new reason to ask for it."); *cf. Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 320-21 (D. Md. 2014) (discussing Rule 59(e)), *aff'd*, 584 F. App'x 135 (4th Cir. 2014) (unpublished) (per curiam). In any event, "[t]here is no serious dispute that a court may sanction a law firm pursuant to its inherent power." *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 147 (2d Cir. 2012).

17

pleadings and that each sanctioned lawyer appeared before the Court in the name of and on behalf of their firms. *E.g.*, Doc. 113 at 3; Doc. 143 at 1-2; *see* Doc. 264 at 54-55. Sanctioned lawyers used firm letterhead and firm email addresses to communicate with other lawyers in the case. *E.g.*, Doc. 203-2; Doc. 213-1 at 2-3. A third, unsanctioned lawyer from the Stueve firm also signed pleadings. *See* Doc. 17 at 21; Doc. 113 at 3. Mr. Kaplan changed law firms around August 2015, but no other attorneys from the earlier firm appeared in court or signed any documents, and his current firm bears only his name, reflecting that he and his firm are one and the same when it comes to court appearances. *See* Doc. 264 at 50 n.30. There is no evidence to suggest that any of these three lawyers were acting outside the scope of their authority as agents of their law firms, and the misconduct occurred over the course of an extended period of time.

Moreover, the law firms ratified the conduct of Mr. Six, Mr. Moore, and Mr. Kaplan in their defense of the sanctions motion, where they repeatedly expressed to the Court the position that the sanctioned lawyers had done nothing wrong. *See supra* p. 11 (listing sanctioned counsel's repeated insistence of their innocence); *see also* Doc. 263 at 20 (representing to the Court that the law firms "conducted full internal reviews" in response to the sanctions motion). Neither firm has presented any evidence to reduce its relative culpability as compared to that of the sanctioned lawyers.

The Court again concludes that it should sanction Stueve Siegel Hanson LLP and Darren Kaplan Law Firm, P.C. for the violation of the duty of candor, based on the misconduct of their partners acting within their authority on behalf of the firms and based

18

on the participation in and ratification of the misconduct by the firms. The law firms are each responsible for the entire sanctions amount.

## III. CONCLUSION

As a result of the bad faith and vexatious conduct of sanctioned counsel in multiplying the proceedings and violating their duty of candor to the Court, Generations incurred attorney's fees and expenses in the amount of $70,147.70 in connection with a renewed motion to dismiss and the first appeal and $118,417.33 in connection with sanction proceedings. The Court finds that a significant sanction is necessary to make Generations whole and to emphasize the importance of counsel's duty of candor to the Court and the negative consequences to the Court, the opposing party, and the system of justice when one violates that duty.

The Court will impose a total sanction of $150,000 in attorney's fees and expenses. Mr. Six, Mr. Kaplan, Stueve Siegel Hanson LLP, and Darren Kaplan Law Firm, P.C. are responsible for paying this entire amount and Mr. Moore is responsible for paying up to $100,000 of this sanction.

It is **ORDERED** that:

1. The motion to reconsider directed towards sanctions against Stueve Siegel Hanson LLP and Darren Kaplan Law Firm, P.C., Doc. 278, is **GRANTED in part**, to the limited extent that the Court supplements its findings of fact and conclusions of law as stated in this opinion. Otherwise, the Court affirms and adopts its original decision as to the sanction against the law firms and the motion is **DENIED**. Stueve Siegel Hanson LLP is liable for the misconduct of

19

Case 1:13-cv-00897-CCE-LPA   Document 285   Filed 02/10/17   Page 19 of 20

Mr. Six and Mr. Moore, Darren Kaplan Law Firm, P.C. is liable for the misconduct of Mr. Kaplan, and sanctions against those firms are appropriate for the reasons stated in the Court's original order and in this order.

2. Steve Six, J. Austin Moore, Darren T. Kaplan, Stueve Siegel Hanson LLP, and Darren Kaplan Law Firm, P.C. are **SANCTIONED** for acting vexatiously, in bad faith, and in violation of their duty of candor to the Court and as a sanction shall reimburse some of Generations' attorney's fees caused by the misconduct.

3. The total financial sanction is $150,000. Mr. Six, Mr. Kaplan, Stueve Siegel Hanson LLP, and Darren Kaplan Law Firm, P.C. are jointly and severally responsible for this entire amount, and Mr. Moore is jointly and severally responsible for part of this sanction in the amount of $100,000.

4. Mr. Six, Mr. Kaplan, Mr. Moore, Stueve Siegel Hanson LLP, and Darren Kaplan Law Firm, P.C. **SHALL PAY** the sanction to Generations no later than March 17, 2017, and each shall file a certificate of compliance with the Court no later than that same date.

This the 10th day of February 2017.

_____
UNITED STATES DISTRICT JUDGE